## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SARA TAYLOR and CHET WILSON, on
behalf of themselves and others similarly
situated,

      Plaintiff,

v.

SAVVY INSURANCE SOLUTIONS, LLC,

      Defendants.

Case No.: 1:25-cv-12393-WGY

## <u>DEFENDANT SAVVY INSURANCE SOLUTIONS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT AND MOTION TO STRIKE</u>

Keshav Ahuja
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241
KAhuja@mintz.com

Esteban Morales (*Pro Hac Vice Pending*)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 586-3200
Fax: (310) 586-3202
emorales@mintz.com

Attorneys for Defendant
SAVVY INSURANCE SOLUTIONS, LLC

## <u>TABLE OF CONTENTS</u>

**Page**

I.      PRELIMINARY STATEMENT ....................................................................1

II.     SUMMARY OF THE ALLEGATIONS ........................................................2

III.    LEGAL STANDARD.................................................................................3

IV.     ARGUMENT .............................................................................................3

    A.      The Court Should Dismiss Plaintiffs' Section 227(c) Claim...................................3

        1.      Plaintiffs' Section 227(c) Theories Are Contrary to the TCPA..................3

            i.      Plaintiffs Cannot Bring a Section 227(c) Claim Based on Cell Phones ...................................................................................3

            ii.     Wilson Cannot Allege a Section 227(c) Claim Premised on Texts .6

            iii.    Prior FCC Orders Do Not Bind the Court .......................................7

        2.      Plaintiffs Do Not Adequately Allege a Residential Number ......................9

        3.      Plaintiff Taylor Does Not Adequately Allege Telephone Solicitations.....10

        4.      Plaintiffs Do Not Allege Placing Their Numbers on the National DNC ...11

    B.      The Section 227(b) Claim Should be Dismissed for Several Independent Reasons ...........................................................................................12

        1.      Plaintiffs Do Not Have Article III Standing ...............................................12

        2.      Plaintiffs Do Not Specify the Theory They Are Pursuing .........................13

        3.      Plaintiff Wilson Fails to Adequately Allege a Section 227(b) Claim........14

    C.      The Request for Trebled Damages Should be Dismissed or Stricken ..................15

    D.      The Court Should Strike the Class Allegations ....................................................15

        1.      The Alleged Classes Are Fail-Safe Classes ...............................................15

        2.      Individualized Inquiries Will Dominate Any Class Analysis.....................17

        3.      Based on the Allegations, Plaintiff Wilson Is Not Typical........................20

V.      CONCLUSION..........................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Andersen v. Nexa Mortg., LLC*,
No. 24-cv-619, 2024 U.S. Dist. LEXIS 143293 (C.D. Cal. Aug. 12, 2024) ..........................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................3

*Bentley v. Verizon Bus. Glob., LLC*,
07 Civ. 9590, 2010 U.S. Dist. LEXIS 32880 (S.D.N.Y. Mar. 31, 2010) ..............................20

*Bryant v. King's Creek Plantation, L.L.C.*,
No. 20-cv-00061, 2020 U.S. Dist. LEXIS 226044 (E.D. Va. June 22, 2020) ........................17

*Crommelin v. Takeda Pharms. U.S.A., Inc.*,
747 F.Supp.3d 304 (D. Mass. 2024) .......................................................................................3

*Cunningham v. McDonald*,
No. 15-cv-215, 2018 WL 6737418 (M.D. Tenn. Nov. 5, 2018)...............................................9

*Cunningham v. Rapid Response Monitoring Servs.*,
251 F. Supp. 3d 1187 (M.D. Tenn. 2017)................................................................................9

*Davis v. CVS Pharm., Inc.*,
No. 24-cv-477, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025).........................7, 8

*Dixon v. Monterey Fin. Servs.*,
No. 15-cv-03298, 2016 U.S. Dist. LEXIS 82601 (N.D. Cal. June 24, 2016).........................16

*Doane v. Benefytt Techs., Inc.*,
No. 22-cv-10510, 2023 U.S Dist. LEXIS 40478 (D. Mass. Mar. 10, 2023) ....................12, 13

*El Sayed v. Naturopathica Holistic Health, Inc.*,
No. 25-cv-846, 2025 U.S. Dist. LEXIS 209469 (M.D. Fla. Oct. 24, 2025) .........................7, 8

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)..............................................................................................................5

*Fields v. Mobile Messengers Am., Inc.*,
No. 12-05160, 2013 U.S. Dist. LEXIS 163950 (N.D. Cal. Nov. 18, 2013) ...........................18

*Gager v. Dell Fin. Servs., LLC*,
    727 F.3d 265 (3d Cir. 2013).......................................................................................6

*Gillam v. Reliance First Cap., LLC*,
    No. 21-CV-4774, 2023 U.S. Dist. LEXIS 29477 (E.D.N.Y. Feb. 22, 2023)...........................9

*Greene v. Select Funding LLC*,
    No. 20-cv-07333, 2021 U.S. Dist. LEXIS 206366 (C.D. Cal. Feb. 5, 2021) .........................11

*Grigorian v. FCA US LLC*,
    838 Fed. Appx. 390 (11th Cir. Dec. 9, 2020) .......................................................13

*Gulden v. Consol. World Travel Inc.*,
    No. 16-CV-01113, 2017 U.S. Dist. LEXIS 23350 (D. Az. Feb. 15, 2017) ...........................11

*HDI-Gerling Am. Ins. v. Navigators Ins.*,
    No. 15-10338-FDS, 2015 U.S. Dist. LEXIS 121457 (D. Mass. Sep. 11, 2015)......................3

*Hicks v. Alarm.com*,
    No. 1:20-cv-532, 2020 U.S. Dist. LEXIS 157433 (E.D. Va. Aug. 6, 2020) ...........................9

*Jones v. Blackstone Med. Servs., LLC*,
    No. 24-cv-1074, 2025 U.S. Dist. LEXIS 138371 (C.D. Ill. July 21, 2025)....................6, 7, 8

*Lanza v. Fin. Indus. Regulatory Auth.*,
    333 F. Supp. 3d 11 (D. Mass. 2018) ...................................................................3

*Lee v. LoanDepot.com, LLC*,
    No. 14-CV-01084-EFM, 2016 U.S. Dist. LEXIS 110100 (D. Kan. Aug. 17,
    2016) ................................................................................................9

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
    No. 12-cv-221, 2013 U.S. Dist. LEXIS 9554 (E.D. Mo. Jan. 24, 2013) ...............................16

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)............................................................................1, 5, 8

*Manopla v. Sansone Jr.'s 66 Automall*, No. 17-16522, 2020 U.S. Dist. LEXIS
    74792 (D.N.J. Jan. 9, 2020) ........................................................................14

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025)................................................................................1, 8

*Moore v. Triumph CSR Acquisition, LLC*,
    No. 23-cv-4659, 2023 U.S. Dist. LEXIS 220876 (N.D. Ill. Dec. 12, 2023).........................13

*Morgan v. U.S. Xpress, Inc.*,
    No. 17-cv-00085, 2018 U.S. Dist. LEXIS 125001 (W.D. Va. July 25, 2018) ..................6, 10

*Morris v. Lincare, Inc.*,
    No. 22-cv-2048, 2023 U.S. Dist. LEXIS 145522 (M.D. Fla. Aug. 18, 2023) ...................6, 13

*Nichols v. eHealthInsurance Servs.*,
    No. 23-cv-06720, 2025 U.S. Dist. LEXIS 37917 (N.D. Cal. Mar. 3, 2025) ..........................17

*Ochoa v. City of Los Angeles*,
    No. 20-cv-06963, 2025 U.S. Dist. LEXIS 155893 (C.D. Cal. Aug. 11, 2025) .....................16

*Osorio v. State Farm Bank, F.S.B.*,
    746 F.3d 1242 (11th Cir. 2014) ...............................................................................................5

*Pepka v. Kohl's Dep't Stores, Inc.*,
    16-cv-4293, 2016 U.S. Dist. LEXIS 186402 (C.D. Cal. Dec. 21, 2016).................................16

*Rogers v. Assur. IQ, LLC*,
    No. 2:21-cv-00823, 2023 U.S. Dist. LEXIS 51955 (W.D. Wash. Mar. 27,
    2023)...............................................................................................................................9, 10, 12

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
    No. 22-cv-15, 2022 U.S. Dist. LEXIS 124614 (N.D. Iowa June 9, 2022) .............................12

*Rovinelli v. Trans World Entm't Corp.*,
    No. 19-cv-11304, 2021 U.S. Dist. LEXIS 37875 (D. Mass. Feb. 2, 2021) .............................3

*Russello v. United States*,
    464 U.S. 16 (1983).....................................................................................................................4

*Sandoe v. Bos. Sci. Corp.*,
    333 F.R.D. 4 (D. Mass. Oct. 3, 2019) ...............................................................................12, 20

*Sepehry-Fard v. Dep Stores Nat'l Bank*,
    15 F. Supp. 3d 984 (N.D. Cal. 2014) .....................................................................................11

*Smith v. American-Amicable Life Ins. Co.*,
    No. 22-333, 2022 U.S. Dist. LEXIS 62115 (E.D. Pa. Apr. 4, 2022) ......................................14

*Smith v. Pro Custom Solar LLC*,
    No. 19-20673, 2021 U.S. Dist. LEXIS 8616 (D.N.J. Jan. 15, 2021) ......................................14

*Sterling v. Securus Techs., Inc.*,
    No. 18-cv-1310, 2020 WL 2198095 (D. Conn. May 6, 2020) ................................................15

*Stevens-Bratton v. TruGreen, Inc.*,
    437 F.Supp.3d 648 (W.D. Tenn. 2020)....................................................................................9

*Stoops v. Wells Fargo Bank, N.A.*,
    197 F.Supp.3d 782 (W.D. Pa. 2016)........................................................................................10

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
No. 23-5114, 2024 U.S. Dist. LEXIS 167980 (E.D. Pa. Sept. 17, 2024) .........................11, 15

**Federal Statutes**

47 U.S.C. § 227(b) ............................................................................................... *passim*

47 U.S.C. § 227(b)(1)(A)(iii) ..............................................................................4, 13

47 U.S.C. § 227(c) ............................................................................................... *passim*

47 U.S.C. § 227(c)(1) ..............................................................................................4, 8

47 U.S.C. § 227(c)(3) ..................................................................................................4

47 U.S.C. § 227(c)(5) ........................................................................................4, 6, 10

**Rules**

Fed. R. Civ. Proc. Rule 12(f)… .....................................................................................3

Fed. R. Civ. Proc. Rule 23(a)(2) and (b)(3) ...............................................................17

**Regulations**

47 C.F.R. § 64.1200(a)(1) ..................................................................................... *passim*

47 C.F.R. § 64.1200(a)(2) ............................................................................................16

47 C.F.R. § 64.1200(a)(3) .........................................................................................4, 16

47 C.F.R. § 64.1200(c) ..................................................................................................10

47 C.F.R. § 64.1200(c)(2) ..................................................................................... *passim*

47 C.F.R. § 64.1200(f)(5) ..............................................................................................19

47 C.F.R. § 64.1200(f)(13) ............................................................................................16

47 C.F.R. § 64.1200(f)(15) ......................................................................................11, 16

**Other Authorities**

137 Cong. Rec. S16204-01 (Nov. 7, 1991) .....................................................................5

*In the Matter of Rules & Regulations Implementing the Telephone Consumer
Protection Act of 1991*, Report and Order, CG Docket No. 92-90, 7 F.C.C.
Rcd. 8752 (Oct. 16, 1992) .............................................................................................8

*Rules and Regulations Federal Communications Commission 47 CFR Parts 64
and 68, Telephone Consumer Protection Act of 1991*, Final Rule,
CC Docket No. 92-90, FCC 92-443, 57 FR 48333-01 (Oct. 23, 1992) .....................................8

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991*, Report and Order,
CG Docket No. 02-278, 18 F.C.C. Rcd. 14014 (July 3, 2003) .............................................7, 8

*In the Matter of Targeting and Eliminating Unlawful Text Messages; Rules &
Regulations Implementing the Telephone Consumer Protection Act of 1991*,
Report and Order and Further Notice of Proposed Rulemaking,
CG Docket Nos. 21-402 and 02-278, 38 F.C.C. Rcd. 2744 (Mar. 17, 2023) ...........................7

## I.    PRELIMINARY STATEMENT

Savvy Insurance Solutions, LLC ("Savvy") respectfully asks the Court to grant its Motion to Dismiss and to Strike. Plaintiffs Sara Taylor and Chet Wilson[1] allege two Telephone Consumer Protection Act ("TCPA") claims: (1) premised on 47 C.F.R. § 64.1200(c)(2), which prohibits telephone solicitations to residential phone numbers that subscribers registered on the National Do Not Call registry  (the "National DNC") and (2) premised on 47 U.S.C. § 227(b), which prohibits calls using pre-recorded voices without consent. Savvy denies the claims have merit.[2]

The Court should dismiss the National DNC claim because: (1) the regulations at Section 64.1200(c)(2) do not apply to cellular phones or text messages;[3] (2) neither Plaintiff adequately alleges a "residential" number; (3) Plaintiff Taylor does not allege more than one telephone solicitation; and (4) neither alleges personally registering their number on the National DNC. The pre-recorded message claim should also be dismissed because: (1) Plaintiffs lack Article III standing; (2) Plaintiffs do not specify whether they are pursuing a cellular or residential phone theory; and (3) Plaintiff Wilson has not alleged facts supporting the claim.

Additionally, Plaintiffs' request for trebled statutory damages should be dismissed and/or stricken because the allegations do not support a willful or knowing violation.

The class allegations should also be stricken because: (1) both alleged classes are fail-safe classes; (2) it is abundantly clear that individualized issues will overwhelm any attempt to certify a class; and (3) because Plaintiff Wilson's own allegations do not make him a member of the National DNC class he seeks to represent. Savvy respectfully asks the Court to grant this Motion.

---

[1] Savvy is aware of eighty-six (86) TCPA class actions filed between 2024 and 2025 with plaintiffs named Sara Taylor (20) and Chet Wilson (66), believed to be the same Plaintiffs here.

[2] Savvy is also evaluating its rights to arbitrate and does not waive any rights it has by pursuing this Motion.

[3] *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

## II.    SUMMARY OF THE ALLEGATIONS

Plaintiffs Taylor and Wilson allege receiving communications on cellular phone numbers. Taylor alleges she is "the subscriber…of the cellular telephone number (706) 391-XXXX," which "is used for personal and residential purposes only; it is not associated with any business." Compl., ¶¶ 22-23. She claims that the "number has been registered continuously on the National Do Not Call Registry since August 29, 2024" and states that "Defendant caused at least two calls to be placed to Ms. Taylor's number on May 9, 2025, from caller ID 844-984-2331. One call was rejected, while the other resulted in a pre-recorded voicemail being left." *Id.* at ¶¶ 24-25.

Wilson alleges he is the "subscriber . . . of the cellular telephone number (541) 999-XXXX," which "is used for residential and personal purposes only, not for business" – unlike Plaintiff Taylor, he does not allege that the number is *not associated* with any business. Compl., ¶¶ 30-31. He claims the "number has been listed on the National Do Not Call Registry prior to March 2025." *Id.* at ¶ 32. Between March 18 and 20, 2025 he allegedly received seven text messages. *Id.* at ¶¶ 34-35. He also alleges that he "received a pre-recorded voicemail from 844-984-2331. The message promoted Defendant's insurance products and contained the same generic script that had been left with other consumers…." *Id.* at ¶ 37.

Plaintiffs allege claims under 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c) and seek to represent a "Robocall Class" and "National Do Not Call Registry Class." Compl., ¶¶ 40, 55-60.[4]

---

[4] The "Robocall Class" is alleged as: "All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendant (or an agent acting on behalf of Defendant) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiffs (5) from four years prior to the filing of the Complaint through trial." Compl., ¶ 40.
The "National Do Not Call Registry Class" is alleged as: "All persons within the United States: (1) whose telephone numbers were registered on the National Do Not Call Registry for at least 31 days prior to the calls at issue, (2) who received more than one telemarketing call from or on behalf of Defendant within any 12-month period, (3) within the four years prior to the filing of the Complaint through trial." Compl., ¶ 40.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, the complaint must state a claim that is plausible on its face." *HDI-Gerling Am. Ins. v. Navigators Ins.*, No. 15-10338-FDS, 2015 U.S. Dist. LEXIS 121457, *6 (D. Mass. Sep. 11, 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lanza v. Fin. Indus. Regulatory Auth.*, 333 F. Supp. 3d 11, 15 (D. Mass. 2018). "A plaintiff's obligation to provide the grounds of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"[D]istrict courts retain considerable discretion to strike material under Rule 12(f)…. [W]hen it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority…to delete the complaint's class allegations." *Rovinelli v. Trans World Entm't Corp.*, No. 19-cv-11304, 2021 U.S. Dist. LEXIS 37875, *15 (D. Mass. Feb. 2, 2021) (internal quotations omitted). "Judges in this District have demonstrated a willingness to grant motions to strike class allegations." *Id.*; *Crommelin v. Takeda Pharms. U.S.A., Inc.*, 747 F.Supp.3d 304, 309-10 (D. Mass. 2024) (striking class allegations).

## IV.    ARGUMENT

### A.    The Court Should Dismiss Plaintiffs' Section 227(c) Claim

#### 1.    *Plaintiffs' Section 227(c) Theories Are Contrary to the TCPA*

##### i.    *Plaintiffs Cannot Bring a Section 227(c) Claim Based on Cell Phones*

Plaintiffs cannot proceed with a claim under Section 227(c), which provides a limited private right of action for a claim premised on violations of the regulations at 47 C.F.R. § 64.1200(c)(2), because it applies only to residential lines, not cellular numbers. In 1991, Congress authorized the "initiat[ion of] a rulemaking proceeding concerning the need to protect

3

*residential* telephone subscribers' privacy rights" in Section 227(c)(1) of the TCPA.[5] Section 227(c)(5) provides a private right of action to a "person who has received more than one telephone call within any 12-month period…in violation of *the regulations prescribed under this subsection*." 47 U.S.C. § 227(c)(5) (emphasis added). Consistent with this, the regulation under which Plaintiffs now sue, prohibits initiation of "telephone solicitation[s] to …[a] *residential* telephone subscriber who has registered his or her telephone number on the national do-not-call registry…." 47 C.F.R. § 64.1200(c)(2) (emphasis added). Section 227(c)(5) and the implementing regulations at Section 64.1200(c)(2) do not apply to cellular phones and are instead limited to "residential" lines – this is correct for a number of reasons.

A plain reading of the TCPA compels this conclusion because the statute explicitly distinguishes "residential" and "cellular" lines. For example, in Section 227(b)(1)(A), Congress made it unlawful to use an "automatic telephone dialing system or an artificial or prerecorded voice," without consent, when calling a "telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Congress separately made it unlawful to use "an artificial or prerecorded voice," without consent, when calling a "residential telephone line." *Id.* at § 227(b)(1)(B). That structure carried over to the implementing regulations at 47 C.F.R. § 64.1200(a)(1)(iii) (addressing "cellular" lines) and 47 C.F.R. § 64.1200(a)(3) (addressing "residential" lines). Congress understood the difference between "residential" and "cellular" lines – had it intended for Section 227(c) to govern "residential" and cellular lines, it would have written the statute accordingly.[6]

---

[5] 47 U.S.C. § 227(c)(1) (emphasis added); *see also* 47 U.S.C. § 227(c)(3) (discussing establishment of a "single national database to compile a list of telephone numbers of residential subscribers").
[6] "[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotations omitted).

This is consistent with the backdrop against which the TCPA was enacted. In common parlance in 1991, a "residential" phone meant a physical telephone attached to a house. When the TCPA was enacted, a residence meant a "[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; house where one's home is." *Residence*, Black's Law Dictionary, Sixth Edition (1990). Webster's defined "residence" as "the place, esp. the house, in which one lives or resides; dwelling place; home" and defined "residential" as "adapted or used for residence." *Residence* and *Residential*, Webster's Unabridged Dictionary of the English Language (1989). When Congress authored Section 227(c), and limited that section to residential lines, residential lines were understood to be "used for [a] residence," where "one lives" – in other words, Congress intended physical telephones attached to a residence. The claim should be dismissed because "[e]very statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (internal citations omitted).

Legislative history also supports the distinction between residential lines and cell phones. Senator Lloyd Bentsen, a co-sponsor of the TCPA, distinguished between residential lines and cellular phones. He explained, for example, that the "bill would ban all unsolicited automated calls to the home that are not made for emergency purposes" and "[i]t would also ban all automated calls to emergency telephone lines, cellular telephones, and paging systems."[7]

Numerous courts have also recognized the distinction between residential lines and cellular phones under the TCPA. The U.S. Supreme Court, for example, explained that the "statute separately prohibits calls using 'an artificial or prerecorded voice' to various types of phone lines, including home phones and cell phones…." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). *See also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014)

---

[7]137 Cong. Rec. S16204-01 (Nov. 7, 1991) (*see also* Senator Bentsen's discussion of advertisements that are "communicated to home, business, and cellular telephones").

(distinguishing between a portion of the TCPA "which prohibits initiating any telephone call to any *residential telephone line* using an artificial or prerecorded voice . . . [whereas] the telephone number in question here, is a cell-phone number") (internal quotations and brackets omitted); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013) (distinguishing between "exemptions that apply exclusively to residential lines" and those for "cellular phones").[8]

The plain language of Section 277(c), contemporaneous definitions, legislative history, and case law, confirm that Section 227(c)'s limit to "residential" lines was not intended to capture cell phones. For that reason, the claim must be dismissed with prejudice.

ii.    *Wilson Cannot Allege a Section 227(c) Claim Premised on Texts*

Plaintiff Wilson's Section 227(c) claim, to the extent it is premised on the receipt of text messages, must also be dismissed because Section 227(c) does not apply to text messages. Savvy incorporates the discussion in the foregoing section here and adds that Section 227(c)(5)'s private right of action is limited to a person "who has received more than one telephone *call*." 47 U.S.C. § 227(c)(5) (emphasis added). Section 227(c) does not reference text messages or indicate that text messages are included as a call. Nor do the implementing regulations at 47 C.F.R. § 64.1200(c)(2) reference text messages.

When Section 227(c) was drafted, Congress could not have intended to include text messages because "text messaging was not an available technology in 1991." *Jones v. Blackstone Med. Servs., LLC*, No. 24-cv-1074, 2025 U.S. Dist. LEXIS 138371, *10 (C.D. Ill. July 21, 2025). As one court noted, "[n]o normal person refers to a text message, as a 'call.' No ordinary user of the English language would write the sentence 'John called Sue' intending to

---

[8] *Morris v. Lincare, Inc.*, No. 22-cv-2048, 2023 U.S. Dist. LEXIS 145522, *9-10 (M.D. Fla. Aug. 18, 2023) ("[T]he statute and case law make clear [residential lines and cell phones] are not one in the same."); *Morgan v. U.S. Xpress, Inc.*, No. 17-cv-00085, 2018 U.S. Dist. LEXIS 125001, *3-6 (W.D. Va. July 25, 2018) ("the structure and language of the TCPA demonstrate that calls made to a cell phone are not calls made to a 'residential telephone line'").

mean 'John sent a text message to Sue,'…no ordinary person would think of a text message as a 'telephone call.' This conclusion – supported by the ordinary public meaning at the time of the provision's enactment – is enough to end this case." *Davis v. CVS Pharm., Inc.*, No. 24-cv-477, 2025 U.S. Dist. LEXIS 167366, *3-4 (N.D. Fla. Aug. 26, 2025).

Accordingly, several courts have recently concluded that a Section 227(c) claim cannot be premised on text messages. The Central District of Illinois, for example, explained:

> Under the principles of statutory interpretation, a court must start with the text of the statute to ascertain its plain meaning….Unless words are otherwise defined, they will be interpreted as taking their ordinary, contemporary, common meaning. …Section 227(c)(5) simultaneously explicitly refers to a 'telephone call'…and remains silent as to its application to text messages. Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages…. Section 227(c)(5) of the TCPA does not regulate text messages.

*Jones*, 2025 U.S. Dist. LEXIS 138371 at *10 (internal quotations omitted).[9] Here too, the statute's plain language, the technological limitations in 1991, and recent case law confirm that Plaintiff Wilson's claim should be dismissed to the extent it is premised on texts.

### iii. *Prior FCC Orders Do Not Bind the Court*

Savvy anticipates that Plaintiffs will rely on two non-binding FCC interpretations – a 2003 order presuming that cell phone subscribers registered on the National DNC should be treated as "residential" subscribers and a 2023 order claiming to extend the National DNC's application to text messages.[10]

---

[9] *See also Davis*, 2025 U.S. Dist. LEXIS 167366 (concluding a Section 227(c) claim cannot be premised on texts and dismissing plaintiff's complaint); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 25-cv-846, 2025 U.S. Dist. LEXIS 209469 (M.D. Fla. Oct. 24, 2025) (dismissing Section 227(c) claim premised on texts and adopting and quoting *Davis*, "a text message is not a 'telephone call.'").

[10] *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 F.C.C.R. 14014 (2003) *and In the Matter of Targeting & Eliminating Unlawful Text Messages; Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket Nos. 21-402 and 02-278, 38 F.C.C.R. 2744 (2023).

As a threshold matter, the Court is not required to defer to the FCC. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025) ("[T]he Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct."); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 373 (2024) (overruling *Chevron* deference and explaining, "*Chevron* gravely erred in concluding that the inquiry is fundamentally different just because an administrative interpretation is in play."). Post-*McLaughlin* and *Loper Bright*, courts "must determine the meaning of the law under ordinary principles of statutory interpretation" and are not bound by an agency's interpretation. *Jones*, 2025 U.S. Dist. LEXIS 138371 at *9-10.

Applying *McLaughlin* and *Loper Bright*, the Court should conclude – for the reasons discussed above – that Section 227(c) does not apply to cellular phones and text messages.[11] In 1991, the FCC was to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights" "[w]ithin 120 days after December 20, 1991," including to "develop proposed regulations."  47 U.S.C. § 227(c)(1). "Not later than 9 months after December 20, 1991, the Commission" was to "conclude the rulemaking proceeding…and shall prescribe regulations…." *Id.* at § 227(c)(2). The regulations contemplated by Section 227(c) were implemented in 1992 and those regulations did not discuss cellular phones or text messages.[12] This is consistent with the plain language of Section 227(c), period definitions of

---

[11] *Davis*, 2025 U.S. Dist. LEXIS 167366 at *8-9 (applying *McLaughlin* and holding that the FCC's 2003 order did not compel allowing plaintiff's claim to proceed); *El Sayed*, 2025 U.S. Dist. LEXIS 209469 at *2 (applying *McLaughlin* and *Loper Bright*, concluding that a "district court must independently determine for itself whether the agency's interpretation of a statute is correct," and adopting *Davis* to dismiss plaintiff's claim).

[12] *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992); *Rules and Regulations Federal Communications Commission 47 CFR Parts 64 and 68, Telephone Consumer Protection act of 1991*, CC Docket No. 92-90, FCC 92-443, 57 FR 48333-01 (Oct. 23, 1992).

central terms, and legislative history. The Court should not defer to later FCC interpretations which impermissibly attempted to expand application of the TCPA.

### 2.    *Plaintiffs Do Not Adequately Allege a Residential Number*

The TCPA's National DNC regulations only apply to certain calls made to a "residential telephone subscriber." 47 C.F.R. § 64.1200(c)(2). If the Court does not dismiss the claims on the basis of the arguments raised Section A. 1., the claim should be dismissed because Plaintiffs do not adequately allege that their telephone numbers qualify as "residential."[13]

Courts routinely dismiss claims – like Plaintiffs' – premised on conclusory allegations that fail to include facts demonstrating why a telephone number qualifies as residential. *Gillam v. Reliance First Cap., LLC*, No. 21-CV-4774, 2023 U.S. Dist. LEXIS 29477, *9 (E.D.N.Y. Feb. 22, 2023) ("Plaintiff's Complaint contains conclusory allegations that his cell phone number was not 'associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use,' he fails to specifically allege any facts from which the Court could infer that the phone number is used for residential purposes."); *Rogers v. Assur. IQ, LLC*, No. 2:21-cv-00823, 2023 U.S. Dist. LEXIS 51955, at*12 (W.D. Wash. Mar. 27, 2023) ("Plaintiffs further chose to describe that the telephone numbers were for 'personal use'… which does not necessarily equate with residential use.").[14]

---

[13] Section 64.1200(c)(2) regulates "telephone solicitations" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry…."

[14] *Hicks v. Alarm.com*, No. 1:20-cv-532, 2020 U.S. Dist. LEXIS 157433, *12 (E.D. Va. Aug. 6, 2020) ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry…but his argument never returns to the facts of this case or the use of his phone."); *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017) (Section 64.1200(c)(2) claim dismissed where plaintiff claimed a cellular number was at issue and pled no facts indicating the number was used for residential purposes); *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020) ("A plaintiff, however, must put forth evidence establishing that her cellular telephone is used for residential purposes."); *Lee v. LoanDepot.com, LLC*, No. 14-CV-01084-EFM, 2016 U.S. Dist. LEXIS 110100, *18 (D. Kan. Aug. 17, 2016) ("To prevail under 47 C.F.R. § 64.1200(c)(2), Plaintiff must establish that his cellular number is used for residential purposes."); *Cunningham v. McDonald*, No. 15-cv-215,

Plaintiff Taylor alleges that her cellular number is "used for personal and residential purposes only; it is not associated with any business." Compl., ¶ 23. Plaintiff Wilson alleges that his cellular number is "used for residential and personal purposes only, not for business"; unlike Taylor, Wilson *does not* claim his number is not associated with businesses. *Id.* at ¶ 30. Neither alleges facts allowing the Court to determine that the numbers in fact are used as residential lines.[15] As *Rogers* explained, "personal use'… does not necessarily equate with residential use" and merely alleging "residential" only parrots the text of 47 C.F.R. § 64.1200(c)(2), which is insufficient to allege a claim. 2023 U.S. Dist. LEXIS 51955, *12; *Morgan*, 2018 WL 3580775, *2 ("Plaintiff's characterization of the cell phone as a 'residential, cellular telephone line' is not determinative….These are not factual allegations, but legal terms drawn from the operative statute."). As it stands, neither Plaintiff has alleged facts demonstrating how they actually use the numbers such that they qualify as residential and rely on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 3.    *Plaintiff Taylor Does Not Adequately Allege Telephone Solicitations*

Plaintiff Taylor's Section 227(c) claim should also be dismissed because she does not allege more than one actionable call. Under 47 U.S.C. § 227(c)(5), a plaintiff can proceed with a claim only if they adequately allege "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations…." Plaintiff Taylor's Section 227(c)

---

2018 WL 6737418, *2 (M.D. Tenn. Nov. 5, 2018) ("[Plaintiff] has pled no facts or offered evidence sufficient for the court to draw the conclusion that he has stated a cause of action under subsection (c)(5)."), *report and rec. adopted by* 2018 WL 6198417 (M.D. Tenn. Nov. 28, 2018); *Cunningham v. Rapid Capital Funding, LLC/RFC*, No. 16-cv-02629, 2017 WL 3574451, *3 (M.D. Ten.. July 27, 2017) ("Plaintiff alleges violations of…47 C.F.R. § 64.1200(c)...for calls made to his *cell phones*….As Plaintiff has not alleged facts showing his cell phones are used for residential purposes, he fails to state a claim…."), *report and rec. adopted by* 2017 WL 3776165 (M.D. Tenn. Aug. 31, 2017).

[15] *See e.g. Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782, 799 (W.D. Pa. 2016) (granting summary judgment for defendant where plaintiff kept multiple phones in a shoe box).

claim is premised on alleged violations of the regulations at 47 C.F.R. § 64.1200(c)(2), which govern "telephone solicitations." "Telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." *See* 47 C.F.R. § 64.1200(f)(15).

Plaintiff Taylor alleges that Savvy caused "at least two calls to be placed…one call was rejected, while the other resulted in a pre-recorded voicemail being left." Compl. ¶ 25. She includes no factual allegations explaining why the first rejected call was a "telephone solicitation." Courts faced with analogous allegations have regularly dismissed TCPA claims for failure to allege more than one actionable call. One court explained:

> [W]hile [Plaintiff] alleges that he received eight calls from Defendant's number within a one-year period, he only answered one of these calls – on April 10, 2020. Thus, at best, Plaintiff has only alleged one telephone solicitation. But more than one telephone solicitation is needed to trigger a violation. Plaintiff, however has not alleged the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations.

*Greene v. Select Funding LLC*, No. 20-cv-07333, 2021 U.S. Dist. LEXIS 206366, *11-12 (C.D. Cal. Feb. 5, 2021).[16] For this reason as well, Plaintiff Taylor's claim should be dismissed.

### 4.    *Plaintiffs Do Not Allege Placing Their Numbers on the National DNC*

The claim should also be dismissed because Plaintiffs do not allege that *they* registered their phone numbers on the National DNC. The plain language of the regulations at 47 C.F.R. § 64.1200(c)(2) confirms that an individual has a claim only if they personally registered their

---

[16] *See also Gulden v. Consol. World Travel Inc.*, No. 16-CV-01113, 2017 U.S. Dist. LEXIS 23350, *7 (D. Az. Feb. 15, 2017) (dismissing claim where plaintiff did "not describe the calls, but simply aver[red] that the calls were made 'for the purpose of soliciting for [Defendant's] products or services"); *Sepehry-Fard v. Dep Stores Nat'l Bank*, 15 F. Supp. 3d 984, 987-88 (N.D. Cal. 2014) (dismissing claim where plaintiff failed to allege facts regarding the contents of calls); *Weingrad v. Top Healthcare Options Ins. Agency Co.*, No. 23-5114, 2024 U.S. Dist. LEXIS 167980, *7-8 (E.D. Pa. Sept. 17, 2024) ("Top Healthcare Options placed nine calls . . . [b]ut Mr. Weingrad only answered one of these calls. Mr. Weingrad does not allege more than one telephone solicitation within a twelve-month period.").

number on the National DNC.[17] Plaintiff Taylor alleges that "her number has been registered continuously on the National Do Not Call Registry" while Plaintiff Wilson alleges that his number "has been listed on the National Do Not Call Registry." Compl. ¶¶ 24-32. However, neither alleges any facts as to who registered their telephone numbers on the National DNC.

Courts have dismissed claims, and denied class certification, where the plaintiff or class members may not have registered the telephone numbers themselves. *See Rogers*, 2023 U.S. Dist. LEXIS 51955 at *11-13 (dismissing claim because plaintiffs did not allege actually registering their numbers on the National DNC and "the numbers could have been registered by previous owners of those numbers").[18] Because neither Plaintiff alleges that they registered their telephone numbers on the National DNC, their claims must be dismissed.

### B. The Section 227(b) Claim Should be Dismissed for Several Independent Reasons

#### 1. *Plaintiffs Do Not Have Article III Standing*

This case should be dismissed in its entirety because, in addition to the inability to allege a Section 227(c) claim, Plaintiffs cannot establish Article III standing for their Section 227(b) claim. "To satisfy the standing requirement, a plaintiff must prove that he '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Doane v. Benefytt Techs., Inc.*, No. 22-cv-

---

[17] The regulations apply only to a "residential telephone *subscriber who has registered his or her telephone number* on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2) (emphasis added).

[18] *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15, 2022 U.S. Dist. LEXIS 124614, *6-7 (N.D. Iowa June 9, 2022) ("Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry…. Plaintiff does not allege, either directly or indirectly, that *she* registered her telephone number….") (emphasis in original); *Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4, 6 (D. Mass. Oct. 3, 2019) (denying class certification where plaintiff did not demonstrate that common proof could be used to "establish…whether the individual who received the call was the individual who registered his or her name on the Do-Not-Call Registry.").

10510, 2023 U.S Dist. LEXIS 40478, *16 (D. Mass. Mar. 10, 2023) (citing *Spokeo v. Robins*, 578 U.S. 330 (2016)). "[T]he complaint must…allege that plaintiff's injuries are traceable to the violations of the TCPA regulations." *Id.* at *17.

Here, each Plaintiff's Section 227(b) claim is premised on the alleged receipt of one prerecorded *unanswered voicemail*. Compl., ¶¶ 25 and 37. Neither Plaintiff alleges how they suffered an injury caused by the voicemail allegedly using a prerecorded message (as opposed to a message left by a live person). *See Doane*, 2023 U.S Dist. LEXIS 40478 at *16-17 (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (2019) and dismissing claim premised on the TCPA's internal do not call regulations because plaintiff's alleged injury was not traceable to the claimed violation of that regulation); *Grigorian v. FCA US LLC*, 838 Fed. Appx. 390 (11th Cir. Dec. 9, 2020) (plaintiff alleging one ringless voicemail lacked standing). Because an injury that is traceable to the alleged TCPA violation – premised on the use of a prerecorded message – has not been alleged, the Plaintiffs' Section 227(b) claim must be dismissed.

## 2. *Plaintiffs Do Not Specify the Theory They Are Pursuing*

Plaintiffs allege "multiple violations of the TCPA, 47 U.S.C. § 227(b)." Compl., ¶ 56. But they do not specify what prerecorded call theory under Section 227(b) they are pursuing. Section 227(b)(1)(A)(iii) governs calls to "cellular" phones whereas Section 227(b)(1)(B) governs calls to "residential" lines and, as one court explained, "[c]ourts widely hold that a cell phone is not a 'residential telephone line' within the meaning of subsection 227(b)(1)(B)." *Moore v. Triumph CSR Acquisition, LLC*, No. 23-cv-4659, 2023 U.S. Dist. LEXIS 220876, *5 (N.D. Ill. Dec. 12, 2023) (collecting authority and dismissing a Section 227(b) claim to the extent it was premised on Section 227(b)(1)(B)). Because Plaintiffs have not specified what theory they are pursuing, the claim should be dismissed. *Morris v. Lincare, Inc.*, 22-cv-2048, 2023 U.S. Dist.

LEXIS 145522, *7-10 (M.D. Fla. Aug. 18, 2023) (dismissing Section 227(b) claim that attempted to allege a cell phone and residential theory).

### 3. *Plaintiff Wilson Fails to Adequately Allege a Section 227(b) Claim*

The Court should also dismiss Plaintiff Wilson's Section 227(b) claim because he has failed to adequately allege the claim. To survive a motion to dismiss, Plaintiff Wilson must allege "factual allegations beyond 'the call had a prerecorded [or artificial] voice.'" *Smith v. Pro Custom Solar LLC*, No. 19-20673, 2021 U.S. Dist. LEXIS 8616, *7 (D.N.J. Jan. 15, 2021). Wilson's Section 227(b) claim is premised on one alleged call. Compl., ¶ 37. Wilson, however, does not allege any facts that allow the Court to determine that he plausibly alleged the use of a prerecorded or artificial voice. Instead, he alleges that he did not answer the call, was left a message with a "generic script that had been left with other consumers," and that it was a "prerecorded message rather than a live call." *Id.* Faced with similar allegations, courts have not hesitated to dismiss Section 227(b) claims.

The plaintiff in *Metzler v. Pure Energy USA LLC*, for example, alleged that he received "a ringless voicemail," which "he was easily able to determine…was a prerecorded message." No. 21-CV-9798, 2023 U.S. Dist. LEXIS 19600, *14 (S.D.N.Y. Feb. 6, 2023). The Southern District of New York dismissed the claim, explaining that the plaintiff failed to allege "additional facts from which the Court c[ould] infer that the message was prerecorded." *Id.* at *14-15.[19]

---

[19] *See also Manopla v. Sansone Jr.'s 66 Automall*, No. 17-16522, 2020 U.S. Dist. LEXIS 74792, *4 (D.N.J. Jan. 9, 2020) (dismissing prerecorded call claim where the complaint was "bereft of any allegations regarding the tenor, nature, or circumstances of the alleged calls" and "merely proffer[ed] the content of the message and conclusorily allege[d] that Defendant utilized a prerecorded message"); *Andersen v. Nexa Mortg., LLC*, No. 24-cv-619, 2024 U.S. Dist. LEXIS 143293, *10-11 (C.D. Cal. Aug. 12, 2024) (allegations of a "long pause" and "several delays throughout the voicemail" did not suffice to allege a prerecorded call claim); *Smith v. American-Amicable Life Ins. Co.*, No. 2022 U.S. Dist. LEXIS 62115 (E.D. Pa. Apr. 4, 2022) (allegations that "the caller ID for both calls was 'spoofed' to make them falsely appear to be coming from a local number, which Plaintiff characterizes as 'further indication of the *en masse* nature of the calling'" did not suffice to state a claim for pre-recorded messages).

Here too, Wilson fails to allege facts from which the Court can conclude that he plausibly alleged use of a prerecorded message. Wilson, for example, does not allege the contents of the message, does not allege details regarding the cadence or tenor of the call, and does not otherwise explain why he thinks it was a prerecorded message. Compl., ¶ 37. His claim, instead, insufficiently boils down to parroting the statutory "prerecorded" element.

### C.    The Request for Trebled Damages Should be Dismissed or Stricken

In their Prayer for Relief, Plaintiffs ask the Court to "enter a judgment for $1,500 for each knowing or willful violation." Compl., Pg. 10. "We may triple the statutory damages if the fact-finder determines [defendant] 'willfully or knowingly' violated the Telephone Consumer Protection Act. [The defendant] must know it performed violative conduct because [i]f we interpreted the statute to require only that the violator knew he was making a 'call'…the statute would have almost no room for violations that are not 'willful or knowing.'" *Weingrad v. Top Healthcare Options Ins. Agency Co.*, No. 23-5114, 2024 U.S. Dist. LEXIS 167980, *10 (E.D. Pa. Sept. 17, 2024) (some internal quotations omitted; dismissing request for trebled damages). Here, as in *Weingrad*, the Court should dismiss or strike the request for trebled damages because there are no factual allegations in the Complaint explaining why a finding of knowing or willful TCPA violations is warranted. *See also Sterling v. Securus Techs., Inc.*, No. 18-cv-1310, 2020 WL 2198095, *6 (D. Conn. May 6, 2020) (dismissing "willful or knowing" allegations because they were based on legal conclusions without supporting facts).

### D.    The Court Should Strike the Class Allegations

#### 1.    *The Alleged Classes Are Fail-Safe Classes*

Plaintiffs' fail-safe class allegations should be stricken. "[T]he fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established….Certification of a

fail-safe class would not only be 'palpably unfair to the defendant, it would be 'unmanageable'…." *Dixon v. Monterey Fin. Servs.*, No. 15-cv-03298, 2016 U.S. Dist. LEXIS 82601, *11 (N.D. Cal. June 24, 2016). "A fail-safe class is improper because courts may not 'engage in free-ranging merits inquiries at the certification stage.'" *Ochoa v. City of Los Angeles*, No. 20-cv-06963, 2025 U.S. Dist. LEXIS 155893, *49-50 (C.D. Cal. Aug. 11, 2025).[20]

The class definitions here track the elements of each claim and improperly turn on merits inquiries at the certification stage.[21] Both classes are cabined to "telemarketing calls." Compl., ¶ 40. For purposes of Plaintiffs' prerecorded call claim, whether a call is telemarketing affects the consent inquiry – a non-telemarketing call requires only "prior express consent" whereas a telemarketing call requires "prior express written consent."[22] Plaintiff's prerecorded class definition thus requires a merits determination as to whether a call qualifies as telemarketing and, if it does, would exclude a class member who provided some form of consent besides "prior express written consent." The National DNC class definition is also problematic. A plaintiff succeeds on a National DNC claim only if they listed their number on the National DNC and calls are "telephone solicitations" – the regulations define "telephone solicitation" similarly to "telemarketing" and exclude calls made with consent or pursuant to an Established Business Relationship from that definition. *See* 47 C.F.R. § 64.1200(c)(2), (f)(13), and (f)(15). If a call is not telemarketing or a telephone solicitation in the first instance, a person *cannot* bring a Section 64.1200(c)(2) claim. Plaintiffs' class definition therefore requires merits determinations on

---

[20] Fail-safe classes are problematic because they necessitate individualized inquiries (discussed below as well). *See e.g. Pepka v. Kohl's Dep't Stores, Inc.*, 16-cv-4293, 2016 U.S. Dist. LEXIS 186402, *8-10 (C.D. Cal. Dec. 21, 2016) (striking fail-safe classes due to individualized inquiries and noting discovery-related concerns) *and Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 12-cv-221, 2013 U.S. Dist. LEXIS 9554, *9-14 (E.D. Mo. Jan. 24, 2013).

[21] *Compare* Compl., ¶ 40 *with* 47 C.F.R. §§ 64.1200(a)(1)-(3) and (c)(2).

[22] 47 C.F.R. § 64.1200(a)(1) and (a)(2); *see also* 47 C.F.R. § 64.1200(f)(13) (defining telemarketing as "encouraging the purchase or rental of, or investment in, property, goods, or services").

critical central issues, including National DNC registration, the type of call at issue, and implicitly requires that the Court also determine whether consent or Established Business Relationship defenses apply. *See e.g. Nichols v. eHealthInsurance Servs.*, No. 23-cv-06720, 2025 U.S. Dist. LEXIS 37917, *12 (N.D. Cal. Mar. 3, 2025) (class definition that turned on "telephone solicitations" was a fail-safe class); *Bryant v. King's Creek Plantation, L.L.C.*, No. 20-cv-00061, 2020 U.S. Dist. LEXIS 226044, *6-7 (E.D. Va. June 22, 2020) (striking National DNC class definition and explaining, "[w]hen plaintiffs define their classes to include members whose telephone numbers are listed on the National Do Not Call Registry, suggesting that the members did not consent to receiving the calls, a court cannot establish membership of the classes until the merits of the TCPA…claim[] is determined.").[23] The class allegations should be stricken.

### 2.    *Individualized Inquiries Will Dominate Any Class Analysis*

The class allegations should also be stricken because it is clear at this stage that individualized issues will dominate any class analysis, defeating commonality and predominance. Fed. R. Civ. Proc. 23(a)(2) and (b)(3).

Plaintiffs allege two claims, each of which turns on individualized consent issues. Plaintiffs can only succeed on their first claim, premised on the alleged use of prerecorded messages, if Savvy did not have consent to call.[24] Likewise, Plaintiffs' second claim, premised on "telephone solicitations" to numbers on the National DNC, only survives if those calls were made without consent.[25] Evaluating whether appropriate consent exists requires an individual-

---

[23] Indeed, consistent with the concerns noted by *Bryant*, Plaintiffs here allege that registration on the National DNC "indicate[s] their desire not to receive telephone solicitations." Compl., ¶ 18.

[24] *See* 47 C.F.R. §§ 64.1200(a)(1) (prohibiting calls "other than a call…made with the prior express consent of the called party") and 64.1200(a)(2) (prohibiting calls "other than a call made with the prior express written consent of the called party").

[25] *See* 47 C.F.R. §§ 64.1200(c)(2) (prohibiting certain "telephone solicitation[s]"), 64.1200(c)(2)(ii) ("Any person or entity making telephone solicitations…will not be liable…if…[i]t has obtained the subscriber's prior express invitation or permission."), and

by-individual inquiry. The Court will have to evaluate, for example: (1) how Savvy received each telephone number; (2) whether each person providing a telephone number agreed to specific consent language; (3) what that consent language said; (4) the purpose of each call (i.e., was it a telephone solicitation) and whether appropriate consent *for that type of call* was received; and (5) if there is a dispute over whether a person provided their telephone number, an evaluation of information such as, the IP address(es) used to consent, the individual's internet service provider, the IP address(es) assigned to that person on the specific date(s) of consent, the device information associated with the consent record, and the person's device(s) potentially used to consent. Based on this alone, the class allegations should be stricken.[26]

Separately, the alleged classes will require an individualized analysis to determine what type of call each person received. Plaintiffs allege two classes, each of which is limited to individuals who received "a **telemarketing** call." Compl., ¶ 40 (emphasis added). Plaintiffs' class definitions necessarily require a call-by-call analysis. If, for example, a person received a call in response to their inquiry, or a call to finish a transaction that they started (such as a call asking for additional vehicle information to finish their request for an insurance policy), a call will not qualify as telemarketing and, in the case of Plaintiffs' first claim could require a lesser standard of consent (as opposed to prior express written consent) while in the case of Plaintiffs' second claim would not trigger a claim at all. And, as Plaintiff Wilson's allegations demonstrate, evaluating whether a call was made with a pre-recorded message will require an individualized

---

64.1200(f)(15) (the term "telephone solicitation…does not include a call or message… to any person with that person's prior express invitation or permission").

[26] *See e.g. Fields v. Mobile Messengers Am., Inc.*, No. 12-05160, 2013 U.S. Dist. LEXIS 163950, *8-14 (N.D. Cal. Nov. 18, 2013) (class certification denied due to individualized issues relating to consent, which included analysis of individual consent records and IP addresses used to visit websites).

inquiry that would include listening to each message and probing each putative class member as to why they believed they received a qualifying call.

Plaintiffs' National DNC claim is limited to telephone numbers that qualify as "**residential**." *See* 47 C.F.R. § 64.1200(c)(2). Assuming the Court allows this claim to proceed, deciding whether a telephone number is residential will turn on a variety of facts specific to each telephone number and potential class member. For example, the type of telephone line at issue, the number of telephone lines and types of lines a particular person had at a given point, whether the individual (or a business) paid for the telephone line, and how the telephone line was used.

Plaintiffs' National DNC claim will also necessitate individualized inquiries because "telephone solicitations" do not just exclude calls made with consent but also exclude calls made pursuant to two different types of "established business relationships."[27] The term "established business relationship" "means a prior or existing relationship formed by a voluntary two-way communication…with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call…." 47 C.F.R. § 64.1200(f)(5). Whether a call qualifies as a telephone solicitation will require an evaluation of prior communications, purchases, applications, inquiries, and a determination as to whether any given call was made within an applicable eighteen or three-month period.

As explained above, moreover, Plaintiffs' National DNC claim can only be brought by a person "who has registered his or her telephone number" on the National DNC. 47 C.F.R. §

---

[27] *See* 47 C.F.R. §§ 64.1200(c)(2) (prohibiting "telephone solicitations") and (f)(15) ("telephone solicitation…does not include a call or message…[t]o any person with whom the caller has an established business relationship.").

64.1200(c)(2). This too requires an individualized inquiry that merits striking the class allegations as to Plaintiffs' second claim. *Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4, 10 (D. Mass. 2019) (denying certification where plaintiff "failed to demonstrate that common proof can be used to establish . . . whether the individual who received the call was the individual who registered his or her name on the Do-Not-Call Registry"). Because the claims are rife with individualized issues, the class allegations should be stricken.

### 3.    *Based on the Allegations, Plaintiff Wilson Is Not Typical*

Additionally, Plaintiff Wilson has not alleged that he is a member of the National DNC class, defined to include only "persons…whose telephone numbers were registered on the National Do Not Call Registry for at least 31 days prior to the calls at issue," because Wilson does not allege when his telephone number was registered. Compl., ¶¶ 32 and 40. *See Bentley v. Verizon Bus. Glob., LLC*, 07 Civ. 9590, 2010 U.S. Dist. LEXIS 32880, *10 (S.D.N.Y. Mar. 31, 2010) ("A class representative must be a member of the class.").

## V.    CONCLUSION

Savvy respectfully urges the Court to grant its Motion without leave to amend.

Respectfully submitted,

**SAVVY INSURANCE SOLUTIONS, LLC**

*/s/  Keshav Ahuja*
Keshav Ahuja BBO # 706907
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
Tel:  (617) 542-6000
Fax:  (617) 542-2241
KAhuja@mintz.com

Esteban Morales *(pro hac vice pending)*
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA  90067
Tel:  (310) 586-3200
Fax:  (310) 586-3202
EMorales@mintz.com

*Attorneys for Defendant Savvy Insurance Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, I caused a true and correct copy of the foregoing document to be filed electronically and served via the Court's ECF system as follows:

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

Attorneys for Plaintiffs
SARA TAYLOR and CHET WILSON

*/s/ Keshav Ahuja*
Keshav Ahuja