## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SARA TAYLOR and CHET WILSON, on
behalf of themselves and others similarly
situated,

      Plaintiff,

v.

SAVVY INSURANCE SOLUTIONS, LLC,

      Defendants.

Case No.: 1:25-cv-12393-WGY

## DEFENDANT SAVVY INSURANCE SOLUTIONS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE THE FIRST AMENDED COMPLAINT

Keshav Ahuja
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241
KAhuja@mintz.com

Esteban Morales (*admitted pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 586-3200
Fax: (310) 586-3202
emorales@mintz.com

Attorneys for Defendant
SAVVY INSURANCE SOLUTIONS, LLC

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................1

II.   SUMMARY OF THE ALLEGATIONS .................................................2

III.  LEGAL STANDARD ...........................................................................3

IV.  ARGUMENT ........................................................................................3

    A.    The Court Should Dismiss Plaintiffs' Section 227(c) Claim ..................................3

        1.    Plaintiffs' Section 227(c) Theories Are Contrary to the TCPA..................3

            i.    Plaintiffs Cannot Bring a Section 227(c) Claim Based on Cell Phones ........................................................................3

            ii.   Wilson Cannot Allege a Section 227(c) Claim Premised on Texts .........................................................................6

            iii.  Prior FCC Orders Do Not Bind the Court ...............................7

        2.    Plaintiff Taylor Does Not Adequately Allege Telephone Solicitations.......9

        3.    Plaintiffs Do Not Allege Placing Their Numbers on the National DNC...10

    B.    The Section 227(b) Claim Should be Dismissed ...................................................11

        1.    Plaintiffs Do Not Have Article III Standing ...............................................11

        2.    Plaintiff Wilson Fails to Adequately Allege a Section 227(b) Claim........12

    C.    The Request for Trebled Damages Should be Dismissed or Stricken ..................14

    D.    The Court Should Strike the Class Allegations ....................................................15

        1.    The Alleged Classes Are Fail-Safe Classes ................................................15

        2.    Individualized Inquiries Will Dominate Any Class Analysis....................17

V.   CONCLUSION....................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andersen v. Nexa Mortg., LLC*,
   No. 24-cv-619, 2024 U.S. Dist. LEXIS 143293 (C.D. Cal. Aug. 12, 2024) ..........................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................3, 10

*Bristow v. Am. Nat'l Ins. Co.*,
   No. 20-cv-10752, 2021 U.S. Dist. LEXIS 102406 (E.D. Mich. June 1, 2021) ......................14

*Bryant v. King's Creek Plantation, L.L.C.*,
   No. 20-cv-00061, 2020 U.S. Dist. LEXIS 226044 (E.D. Va. June 22, 2020) ........................17

*Crommelin v. Takeda Pharms. U.S.A., Inc.*,
   747 F.Supp.3d 304 (D. Mass. 2024) ......................................................................................3

*Davis v. CVS Pharm., Inc.*,
   No. 24-cv-477, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025)........................7, 8

*Dixon v. Monterey Fin. Servs.*,
   No. 15-cv-03298, 2016 U.S. Dist. LEXIS 82601 (N.D. Cal. June 24, 2016).........................15

*Doane v. Benefytt Techs., Inc.*,
   No. 22-cv-10510, 2023 U.S Dist. LEXIS 40478 (D. Mass. Mar. 10, 2023) ....................11, 12

*El Sayed v. Naturopathica Holistic Health, Inc.*,
   No. 25-cv-846, 2025 U.S. Dist. LEXIS 209469 (M.D. Fla. Oct. 24, 2025) .........................7, 8

*Facebook, Inc. v. Duguid*,
   592 U.S. 395 (2021)................................................................................................................6

*Fields v. Mobile Messengers Am., Inc.*,
   No. 12-05160, 2013 U.S. Dist. LEXIS 163950 (N.D. Cal. Nov. 18, 2013) ..........................18

*Gager v. Dell Fin. Servs., LLC*,
   727 F.3d 265 (3d Cir. 2013).....................................................................................................6

*Gillam v. Reliance First Cap.*,
   LLC, No. 21-CV-4774, 2023 U.S. Dist. LEXIS 29477 (E.D.N.Y. Feb. 22,
   2023) ......................................................................................................................................10

*Greene v. Select Funding LLC*,
   No. 20-cv-07333, 2021 U.S. Dist. LEXIS 206366 (C.D. Cal. Feb. 5, 2021) ..........................10

*Grigorian v. FCA US LLC*,
    838 Fed. Appx. 390 (11th Cir. Dec. 9, 2020) .......................................................12

*Gulden v. Consol. World Travel Inc.*,
    No. 16-CV-01113, 2017 U.S. Dist. LEXIS 23350 (D. Az. Feb. 15, 2017) ...........10

*HDI-Gerling Am. Ins. v. Navigators Ins.*,
    No. 15-10338-FDS, 2015 U.S. Dist. LEXIS 121457 (D. Mass. Sep. 11, 2015)......................3

*Jones v. Blackstone Med. Servs., LLC*,
    No. 24-cv-1074, 2025 U.S. Dist. LEXIS 138371 (C.D. Ill. July 21, 2025)........................7, 8

*Lanza v. Fin. Indus. Regulatory Auth.*,
    333 F. Supp. 3d 11 (D. Mass. 2018) ......................................................................3

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
    780 F.3d 1101 (11th Cir. 2015) ............................................................................15

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
    No. 12-cv-221, 2013 U.S. Dist. LEXIS 9554 (E.D. Mo. Jan. 24, 2013) ..........................15, 17

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)..............................................................................1, 5, 8

*Manopla v. Sansone Jr.'s 66 Automall*, No. 17-16522, 2020 U.S. Dist. LEXIS
    74792 (D.N.J. Jan. 9, 2020) ...............................................................................13

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025).............................................................................................1, 8

*Metzler v. Pure Energy USA LLC*,
    No. 21-cv-9798, 2023 U.S. Dist. LEXIS 19600 (S.D.N.Y. Feb. 6, 2023).............................13

*Moore v. Triumph CSR Acquisition, LLC*,
    No. 23-cv-4659, 2023 U.S. Dist. LEXIS 220876 (N.D. Ill. Dec. 12, 2023).............................4

*Morgan v. U.S. Xpress, Inc.*,
    No. 17-cv-00085, 2018 U.S. Dist. LEXIS 125001 (W.D. Va. July 25, 2018) ........................6

*Morris v. Lincare, Inc.*,
    22-cv-2048, 2023 U.S. Dist. LEXIS 145522 (M.D. Fla. Aug. 18, 2023).............................4, 6

*Nichols v. eHealthInsurance Servs.*,
    No. 23-cv-06720, 2025 U.S. Dist. LEXIS 37917 (N.D. Cal. Mar. 3, 2025) ........................17

*Ochoa v. City of Los Angeles*,
    No. 20-cv-06963, 2025 U.S. Dist. LEXIS 155893 (C.D. Cal. Aug. 11, 2025) .....................15

*Osorio v. State Farm Bank, F.S.B.*,
 746 F.3d 1242 (11th Cir. 2014) ............................................................................6

*Pepka v. Kohl's Dep't Stores, Inc.*,
 No. 16-cv-4293, 2016 U.S. Dist. LEXIS 186402 (C.D. Cal. Dec. 21, 2016) ........15

*Rogers v. Assur. IQ*,
 No. 21-cv-823, 2023 U.S. Dist. LEXIS 51955 (W.D. Wash. Mar. 27, 2023) ........11

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
 No. 22-cv-15, 2022 U.S. Dist. LEXIS 124614 (N.D. Iowa June 9, 2022) .............11

*Rovinelli v. Trans World Entm't Corp.*,
 No. 19-cv-11304, 2021 U.S. Dist. LEXIS 37875 (D. Mass. Feb. 2, 2021) .............3

*Russello v. United States*,
 464 U.S. 16 (1983)................................................................................................5

*Sandoe v. Bos. Sci. Corp.*,
 333 F.R.D. 4 (D. Mass. Oct. 3, 2019) ..............................................................11, 20

*Sepehry-Fard v. Dep Stores Nat'l Bank*,
 15 F. Supp. 3d 984 (N.D. Cal. 2014) ...................................................................10

*Smith v. American-Amicable Life Ins. Co.*,
 No. 22-cv-333, 2022 U.S. Dist. LEXIS 62115 (E.D. Pa. Apr. 4, 2022) ................13

*Smith v. Pro Custom Solar LLC*,
 No. 19-cv-20673, 2021 U.S. Dist. LEXIS 8616 (D.N.J. Jan. 15, 2021) ................12

*Sterling v. Securus Techs., Inc.*,
 No. 18-cv-1310, 2020 WL 2198095 (D. Conn. May 6, 2020) ..............................14

*Stevens-Bratton v. TruGreen, Inc.*,
 437 F. Supp. 3d 648 (W.D. Tenn. 2020)................................................................19

*True Health Chiropractic, Inc. v. McKesson Corp.*,
 Nos. 22-15710 and 22-15732, 2023 U.S. App. LEXIS 28346 (9th Cir. Oct. 25,
 2023) ...................................................................................................................14

*Wakefield v. ViSalus, Inc.*,
 No. 15-cv-1857, 2019 U.S. Dist. LEXIS 104862 (D. Or. June 24, 2019) .............15

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
 No. 23-cv-5114, 2024 U.S. Dist. LEXIS 167980 (E.D. Pa. Sept. 17, 2024)....10, 14

**Federal Statutes**

47 U.S.C. § 227(b) ........................................................................................ *passim*

47 U.S.C. § 227(b)(1)(A) ..................................................................................................4

47 U.S.C. § 227(b)(1)(B) ..................................................................................................4

47 U.S.C. § 227(c) ................................................................................................. *passim*

47 U.S.C. § 227(c)(1) ....................................................................................................4, 8

47 U.S.C. § 227(c)(2) ........................................................................................................8

47 U.S.C. § 227(c)(3) ........................................................................................................4

47 U.S.C. § 227(c)(5) ................................................................................................4, 6, 9

**Regulations**

47 C.F.R. § 64.1200(a)(1) .................................................................................... *passim*

47 C.F.R. § 64.1200(a)(2) ..........................................................................................16, 18

47 C.F.R. § 64.1200(a)(3) ..................................................................................................4

47 C.F.R. § 64.1200(c)(2) .................................................................................... *passim*

47 C.F.R. § 64.1200(f)(1) ................................................................................................17

47 C.F.R. § 64.1200(f)(5) ................................................................................................20

47 C.F.R. § 64.1200(f)(13) ........................................................................................16, 17

47 C.F.R. § 64.1200(f)(15) ....................................................................................9, 17, 19

**Rules**

Fed. R. Civ. Proc. Rule 12(b)(6) .....................................................................................14

Fed. R. Civ. Proc. Rule 12(f)… .........................................................................................3

Fed. R. Civ. Proc. 23(a)(2) and (b)(3) ............................................................................17

**Other Authorities**

137 Cong. Rec. S16204-01 (Nov. 7, 1991) ......................................................................5

*In the Matter of Rules & Regulations Implementing the Telephone Consumer*
    *Protection Act of 1991,*
    Report and Order, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ...........................................9

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
  CG Docket No. 02-278, 18 F.C.C.R. 14014 (2003) ..................................................................8,

*In the Matter of Targeting & Eliminating Unlawful Text Messages; Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
  CG Docket Nos. 21-402 and 02-278, 38 F.C.C.R. 2744 (2023).................................................8

*Rules and Regulations Federal Communications Commission 47 CFR Parts 64 and 68, Telephone Consumer Protection act of 1991*, CC Docket No. 92-90,
  FCC 92-443, 57 FR 48333-01 (Oct. 23, 1992) ........................................................................9

## I.    PRELIMINARY STATEMENT

Savvy Insurance Solutions, LLC ("Savvy") respectfully asks the Court to grant its Motion to Dismiss and to Strike the First Amended Complaint. Plaintiffs Sara Taylor and Chet Wilson[1] continue to allege two deficient Telephone Consumer Protection Act ("TCPA") claims: (1) premised on 47 C.F.R. § 64.1200(c)(2), which prohibits telephone solicitations to residential phone numbers that subscribers registered on the National Do Not Call registry  (the "National DNC") and (2) premised on 47 U.S.C. § 227(b), which prohibits calls using pre-recorded voices without consent. Savvy denies the claims in the First Amended Complaint ("FAC") have merit – the claims should be dismissed and Plaintiffs should not be given further opportunity to amend.[2]

The Court should dismiss the National DNC claim because: (1) the regulations at Section 64.1200(c)(2) do not apply to cellular phones or text messages;[3] (2) Plaintiff Taylor again does not allege more than one telephone solicitation; and (3) neither Plaintiff has alleged personally registering their number on the National DNC despite the opportunity to do so. The pre-recorded message claim should also be dismissed because: (1) Plaintiffs lack Article III standing; and (2) Plaintiff Wilson again has not alleged facts supporting the claim.

Additionally, Plaintiffs' request for trebled statutory damages should be dismissed and/or stricken because the amended allegations do not support a willful or knowing violation.

The class allegations should also be stricken because: (1) both alleged classes are fail-safe classes despite revised class definitions; and (2) it is abundantly clear that individualized issues will overwhelm any attempt to certify a class.

---

[1] Savvy is aware of eighty-six (86) TCPA class actions filed between 2024 and 2025 with plaintiffs named Sara Taylor (20) and Chet Wilson (66), believed to be the same Plaintiffs here.

[2] Savvy is also evaluating its rights to arbitrate and does not waive any rights it has by pursuing this Motion.

[3] *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

1

## II.    SUMMARY OF THE ALLEGATIONS

Plaintiffs Taylor and Wilson allege receiving communications on cellular phone numbers. Taylor alleges she is "the subscriber…of the cellular telephone number (706) 391-XXXX." FAC, ¶ 22; Initial Complaint ("Compl."), ¶ 22. As in the initial Complaint, she claims that the "number has been registered continuously on the National Do Not Call Registry since August 29, 2024" and states that "Defendant caused at least two calls to be placed to Ms. Taylor's number on May 9, 2025, from caller ID 844-984-2331. One call was rejected, while the other resulted in a pre-recorded voicemail being left." FAC, ¶¶ 30-31; Compl.,¶¶ 24-25.

Wilson alleges he is the "subscriber . . . of the cellular telephone number (541) 999-XXXX." FAC, ¶ 40; Compl., ¶ 30. He continues to allege that the "number has been listed on the National Do Not Call Registry prior to March 2025." FAC, ¶ 48; Compl., ¶ 32. Between March 18 and 20, 2025 he allegedly received seven text messages. FAC, ¶¶ 50-51; Compl., ¶¶ 34-35. He also alleges that he "received a pre-recorded voicemail from 844-984-2331" that "promoted Defendant's insurance products and contained the same generic script that had been left with other consumers…." FAC, ¶¶ 53-54; Compl., ¶ 37.

Based on the foregoing, Plaintiffs allege claims under 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c) and seek to represent a "Robocall Class" and "National Do Not Call Registry Class." FAC, ¶¶ 72, 55-60 at Pgs. 13-14; Compl., ¶¶ 40, 55-60.[4]

---

[4] The "Robocall Class" is alleged as: "All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendant (or an agent acting on behalf of Defendant) placed a call advertising their goods or services (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiffs (5) from four years prior to the filing of the Complaint through trial." FAC, ¶ 72; *Compare with* Compl., ¶ 40.
The "National Do Not Call Registry Class" is alleged as: "All persons within the United States: (1) whose telephone numbers were registered on the National Do Not Call Registry for at least 31 days prior to the calls at issue, (2) who received more than one a call [sic] advertising their goods or services from or on behalf of Defendant within any 12-month period, (3) within the four years prior to the filing of the Complaint through trial." FAC, ¶ 72; *Compare with* Compl., ¶ 40.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, the complaint must state a claim that is plausible on its face." *HDI-Gerling Am. Ins. v. Navigators Ins.*, No. 15-cv-10338-FDS, 2015 U.S. Dist. LEXIS 121457, *6 (D. Mass. Sep. 11, 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lanza v. Fin. Indus. Regulatory Auth.*, 333 F. Supp. 3d 11, 15 (D. Mass. 2018). "A plaintiff's obligation to provide the grounds of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"[D]istrict courts retain considerable discretion to strike material under Rule 12(f).... [W]hen it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority…to delete the complaint's class allegations." *Rovinelli v. Trans World Entm't Corp.*, No. 19-cv-11304, 2021 U.S. Dist. LEXIS 37875, *15 (D. Mass. Feb. 2, 2021) (internal quotations omitted). "Judges in this District have demonstrated a willingness to grant motions to strike class allegations." *Id.*; *Crommelin v. Takeda Pharms. U.S.A., Inc.*, 747 F.Supp.3d 304, 309-10 (D. Mass. 2024) (striking class allegations).

## IV.    ARGUMENT

### A.    The Court Should Dismiss Plaintiffs' Section 227(c) Claim

#### 1.    *Plaintiffs' Section 227(c) Theories Are Contrary to the TCPA*

##### i.    *Plaintiffs Cannot Bring a Section 227(c) Claim Based on Cell Phones*

Plaintiffs cannot proceed with a claim under Section 227(c), which provides a limited private right of action for a claim premised on violations of the regulations at 47 C.F.R. § 64.1200(c)(2), because it applies only to residential lines, not cellular numbers. In 1991, Congress authorized the "initiat[ion of] a rulemaking proceeding concerning the need to protect

*residential* telephone subscribers' privacy rights" in Section 227(c)(1) of the TCPA.[5] Section 227(c)(5) provides a private right of action to a "person who has received more than one telephone call within any 12-month period…in violation of ***the regulations prescribed under this subsection***." 47 U.S.C. § 227(c)(5) (emphasis added). Consistent with this, the regulation under which Plaintiffs now sue, prohibits initiation of "telephone solicitation[s] to …[a] *residential* telephone subscriber who has registered his or her telephone number on the national do-not-call registry…." 47 C.F.R. § 64.1200(c)(2) (emphasis added). Contrary to Plaintiffs' theory, Section 227(c)(5) and regulations at Section 64.1200(c)(2) do not apply to cellular phones and instead are limited to "residential" lines – this is correct for a number of reasons.

A plain reading of the TCPA compels this conclusion because the statute explicitly distinguishes "residential" and "cellular" lines. For example, in Section 227(b)(1)(A), Congress made it unlawful to use an "automatic telephone dialing system or an artificial or prerecorded voice," without consent, when calling a "telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Congress separately made it unlawful to use "an artificial or prerecorded voice," without consent, when calling a "residential telephone line." *Id.* at § 227(b)(1)(B).[6] That structure carried over to the implementing regulations at 47 C.F.R. § 64.1200(a)(1)(iii) (addressing "cellular" phones) and 47 C.F.R. § 64.1200(a)(3) (addressing

---

[5] 47 U.S.C. § 227(c)(1) (emphasis added); *see also* 47 U.S.C. § 227(c)(3) (discussing establishment of a "single national database to compile a list of telephone numbers of residential subscribers").

[6] Accordingly, "[c]ourts widely hold that a cell phone is not a 'residential telephone line'…." *Moore v. Triumph CSR Acquisition, LLC*, No. 23-cv-4659, 2023 U.S. Dist. LEXIS 220876, *5 (N.D. Ill. Dec. 12, 2023) (collecting authority); *Morris v. Lincare, Inc.*, 22-cv-2048, 2023 U.S. Dist. LEXIS 145522, *7-10 (M.D. Fla. Aug. 18, 2023) (dismissing Section 227(b) claim that attempted to allege a cell phone and residential theory). Acknowledging that distinction, after Savvy explained in its initial Motion to Dismiss that Plaintiffs had not alleged whether they were bringing their Section 227(b) claim under Section 227(b)(1)(A)(iii) (dealing with cellular phones) or under Section 227(b)(1)(B) (dealing with residential phone lines), Plaintiffs now allege that they are bringing their Section 227(b) prerecorded message claim under Section 227(b)(1)(A)(iii)'s *cellular* phone provisions, *not* Section 227(b)'s residential provisions. FAC, ¶¶ 63 and 65.

"residential" lines). Congress understood the difference between "residential" and "cellular" lines – had it intended for Section 227(c) to govern "residential" *and* cellular lines, it would have written the statute accordingly.[7]

This is consistent with the backdrop against which the TCPA was enacted. In common parlance in 1991, a "residential" phone meant a physical telephone attached to a house. When the TCPA was enacted, a residence meant a "[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; house where one's home is." *Residence*, Black's Law Dictionary, Sixth Edition (1990). Webster's defined "residence" as "the place, esp. the house, in which one lives or resides; dwelling place; home" and defined "residential" as "adapted or used for residence." *Residence* and *Residential*, Webster's Unabridged Dictionary of the English Language (1989). When Congress authored Section 227(c), and limited that section to residential lines, residential lines were understood to be "used for [a] residence," where "one lives" – in other words, Congress intended physical telephones attached to a residence. The claim should be dismissed because "[e]very statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (internal citations omitted).

Legislative history also supports the distinction between residential lines and cell phones. Senator Lloyd Bentsen, a co-sponsor of the TCPA, distinguished between residential lines and cellular phones. He explained, for example, that the "bill would ban all unsolicited automated calls to the home that are not made for emergency purposes" and "[i]t would also ban all automated calls to emergency telephone lines, cellular telephones, and paging systems."[8]

---

[7] "[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotations omitted).
[8] 137 Cong. Rec. S16204-01 (Nov. 7, 1991) (*see also* Senator Bentsen's discussion of advertisements that are "communicated to home, business, and cellular telephones").

Numerous courts have also recognized the distinction between residential lines and cellular phones under the TCPA. The U.S. Supreme Court, for example, explained that the "statute separately prohibits calls using 'an artificial or prerecorded voice' to various types of phone lines, including home phones and cell phones…." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). *See also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014) (distinguishing between a portion of the TCPA "which prohibits initiating any telephone call to any *residential telephone line* using an artificial or prerecorded voice … [whereas] the telephone number in question here, is a cell-phone number") (internal quotations and brackets omitted); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013) (distinguishing between "exemptions that apply exclusively to residential lines" and those for "cellular phones").[9]

The plain language of Section 277(c), contemporaneous definitions, legislative history, and case law, confirm that Section 227(c)'s limit to "residential" lines was not intended to capture cell phones. For that reason, the claim must be dismissed with prejudice.

          ii.      *Wilson Cannot Allege a Section 227(c) Claim Premised on Texts*

Plaintiff Wilson's Section 227(c) claim, to the extent it is premised on the receipt of text messages, must also be dismissed because Section 227(c) does not apply to text messages. Savvy incorporates the discussion in the foregoing section here and adds that Section 227(c)(5)'s private right of action is limited to a person "who has received more than one telephone *call*." 47 U.S.C. § 227(c)(5) (emphasis added). Section 227(c) does not reference text messages or indicate that text messages are included as a call. Nor do the implementing regulations at 47 C.F.R. § 64.1200(c)(2) reference text messages.

---

[9] *Morris v. Lincare, Inc.*, No. 22-cv-2048, 2023 U.S. Dist. LEXIS 145522, *9-10 (M.D. Fla. Aug. 18, 2023) ("[T]he statute and case law make clear [residential lines and cell phones] are not one in the same."); *Morgan v. U.S. Xpress, Inc.*, No. 17-cv-00085, 2018 U.S. Dist. LEXIS 125001, *3-6 (W.D. Va. July 25, 2018) ("the structure and language of the TCPA demonstrate that calls made to a cell phone are not calls made to a 'residential telephone line'").

When Section 227(c) was drafted, Congress could not have intended to include text messages because "text messaging was not an available technology in 1991." *Jones v. Blackstone Med. Servs., LLC*, No. 24-cv-1074, 2025 U.S. Dist. LEXIS 138371, *10 (C.D. Ill. July 21, 2025). As one court noted, "[n]o normal person refers to a text message, as a 'call.' No ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,'…no ordinary person would think of a text message as a 'telephone call.' This conclusion – supported by the ordinary public meaning at the time of the provision's enactment – is enough to end this case." *Davis v. CVS Pharm., Inc.*, No. 24-cv-477, 2025 U.S. Dist. LEXIS 167366, *3-4 (N.D. Fla. Aug. 26, 2025).

Accordingly, several courts have recently concluded that a Section 227(c) claim cannot be premised on text messages. The Central District of Illinois, for example, explained:

> Under the principles of statutory interpretation, a court must start with the text of the statute to ascertain its plain meaning….Unless words are otherwise defined, they will be interpreted as taking their ordinary, contemporary, common meaning. …Section 227(c)(5) simultaneously explicitly refers to a 'telephone call'…and remains silent as to its application to text messages. Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages…. Section 227(c)(5) of the TCPA does not regulate text messages.

*Jones*, 2025 U.S. Dist. LEXIS 138371 at *10 (internal quotations omitted).[10] Here too, the statute's plain language, the technological limitations in 1991, and recent case law confirm that Plaintiff Wilson's claim should be dismissed to the extent it is premised on texts.

### iii.    *Prior FCC Orders Do Not Bind the Court*

Savvy anticipates that Plaintiffs will rely on two non-binding FCC interpretations – a 2003 order presuming that cell phone subscribers registered on the National DNC should be

---

[10] *See also Davis*, 2025 U.S. Dist. LEXIS 167366 (concluding a Section 227(c) claim cannot be premised on texts and dismissing plaintiff's complaint); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 25-cv-846, 2025 U.S. Dist. LEXIS 209469 (M.D. Fla. Oct. 24, 2025) (dismissing Section 227(c) claim premised on texts and adopting and quoting *Davis*, "a text message is not a 'telephone call.'").

treated as "residential" subscribers and a 2023 order claiming to extend the National DNC's application to text messages.[11]

As a threshold matter, the Court is not required to defer to the FCC. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025) ("[T]he Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct."); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 373 (2024) (overruling *Chevron* deference and explaining, "*Chevron* gravely erred in concluding that the inquiry is fundamentally different just because an administrative interpretation is in play."). Post-*McLaughlin* and *Loper Bright*, courts "must determine the meaning of the law under ordinary principles of statutory interpretation" and are not bound by an agency's interpretation. *Jones*, 2025 U.S. Dist. LEXIS 138371 at *9-10.

Applying *McLaughlin* and *Loper Bright*, the Court should conclude – for the reasons discussed above – that Section 227(c) does not apply to cellular phones and text messages.[12] In 1991, the FCC was to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights" "[w]ithin 120 days after December 20, 1991," including to "develop proposed regulations." 47 U.S.C. § 227(c)(1). "Not later than 9 months after December 20, 1991, the Commission" was to "conclude the rulemaking proceeding…and shall prescribe regulations…." *Id.* at § 227(c)(2). The regulations contemplated by Section 227(c) were implemented in 1992 and those regulations did not discuss cellular phones or text

---

[11] *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 F.C.C.R. 14014 (2003) *and In the Matter of Targeting & Eliminating Unlawful Text Messages; Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket Nos. 21-402 and 02-278, 38 F.C.C.R. 2744 (2023).
[12] *Davis*, 2025 U.S. Dist. LEXIS 167366 at *8-9 (applying *McLaughlin* and holding that the FCC's 2003 order did not compel allowing plaintiff's claim to proceed); *El Sayed*, 2025 U.S. Dist. LEXIS 209469 at *2 (applying *McLaughlin* and *Loper Bright*, concluding that a "district court must independently determine for itself whether the agency's interpretation of a statute is correct," and adopting *Davis* to dismiss plaintiff's claim).

messages.[13] This is consistent with the plain language of Section 227(c), period definitions of central terms, and legislative history. The Court should not defer to later FCC interpretations which impermissibly attempted to expand application of the TCPA.

### 2. *Plaintiff Taylor Does Not Adequately Allege Telephone Solicitations*

Plaintiff Taylor's Section 227(c) claim should also be dismissed because she does not allege more than one actionable call. Under 47 U.S.C. § 227(c)(5), a plaintiff can proceed with a claim only if they adequately allege "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations…." Plaintiff Taylor's Section 227(c) claim is premised on alleged violations of the regulations at 47 C.F.R. § 64.1200(c)(2), which govern "telephone solicitations." "Telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." *See* 47 C.F.R. § 64.1200(f)(15).

Plaintiff Taylor alleges that Savvy caused "at least two calls to be placed…one call was *rejected*, while the other resulted in a pre-recorded voicemail being left." FAC, ¶ 30 (emphasis added); *see also* Compl. ¶ 25. She includes no allegations beyond legal conclusions explaining why the first rejected call was a "telephone solicitation." Courts faced with analogous allegations have regularly dismissed TCPA claims for failure to allege more than one actionable call. One court explained:

> **Mr. Weingrad does not allege he received "more than one" telephone call**
>
> TopHealthcare Options argues Mr. Weingrad does not allege he received more than one telephone solicitation….Mr. Weingrad pleads he received nine calls from Top Healthcare Options's phone numbers and we must infer those calls were telephone solicitations at this stage.
> …

---

[13] *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992); *Rules and Regulations Federal Communications Commission 47 CFR Parts 64 and 68, Telephone Consumer Protection act of 1991*, CC Docket No. 92-90, FCC 92-443, 57 FR 48333-01 (Oct. 23, 1992).

Congress through the Telephone Consumer Protection Act provides "[a] person who has received more than one telephone call within any 12-month period . . . may assert a claim…. Mr. Weingrad must plead (1) he received more than one telephone solicitation call within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the Do Not Call Registry.

…

Top Healthcare Options placed nine calls to Mr. Weingrad. But Mr. Weingrad only answered one of these calls. Mr. Weingrad does not allege more than one telephone solicitation within a twelve-month period.

*Weingrad v. Top Healthcare Options Ins. Agency Co.*, No. 23-5114, 2024 U.S. Dist. LEXIS 167980, \*5-8 (E.D. Pa. Sept. 17, 2024); *Gillam v. Reliance First Cap., LLC*, No. 21-CV-4774, 2023 U.S. Dist. LEXIS 29477, \*5-6 (E.D.N.Y. Feb. 22, 2023) (dismissing claim for failing to allege more than one telephone solicitation including because, as here, plaintiff did not allege sufficient facts showing a lack of an established business relationship); *Greene v. Select Funding LLC*, No. 20-cv-07333, 2021 U.S. Dist. LEXIS 206366, \*11-12 (C.D. Cal. Feb. 5, 2021) ("[W]hile [Plaintiff] alleges that he received eight calls from Defendant's number within a one-year period, he only answered one of these calls – on April 10, 2020. Thus, at best, Plaintiff has only alleged one telephone solicitation. But more than one telephone solicitation is needed to trigger a violation.").[14] For this reason as well, Plaintiff Taylor's claim should be dismissed.

### 3.    *Plaintiffs Do Not Allege Placing Their Numbers on the National DNC*

The claim should also be dismissed because Plaintiffs, despite amending, again do not allege that *they* registered their phone numbers on the National DNC. The plain language of the regulations at 47 C.F.R. § 64.1200(c)(2) confirms that an individual has a claim only if they

---

[14] *See also Gulden v. Consol. World Travel Inc.*, No. 16-CV-01113, 2017 U.S. Dist. LEXIS 23350, \*7 (D. Az. Feb. 15, 2017) (dismissing claim where plaintiff did "not describe the calls, but simply aver[red] that the calls were made 'for the purpose of soliciting for [Defendant's] products or services" which the court concluded "is nothing more than a conclusion, which *Twombly* specifically prohibits"); *Sepehry-Fard v. Dep Stores Nat'l Bank*, 15 F. Supp. 3d 984, 987-88 (N.D. Cal. 2014) (dismissing claim where plaintiff failed to allege facts regarding the contents of calls).

personally registered their number on the National DNC.[15] Plaintiff Taylor alleges that her "number has been registered continuously on the National Do Not Call Registry" while Plaintiff Wilson alleges that his number "has been listed on the National Do Not Call Registry." FAC, ¶¶ 30 and 48; Compl. ¶¶ 24 and 32. As in the initial Complaint, neither alleges any facts as to who registered the numbers on the National DNC as required by the regulation's plain language.

Courts have dismissed claims, and denied class certification (in this District), where plaintiff or class members may not have registered numbers themselves. *Rogers v. Assur. IQ*, No. 21-cv-823, 2023 U.S. Dist. LEXIS 51955, *11-13 (W.D. Wash. Mar. 27, 2023) (dismissing claim because plaintiffs did not allege actually registering their numbers on National DNC, "the numbers could have been registered by previous owners of those numbers").[16] Because neither Plaintiff alleges they registered their numbers on the National DNC, their claims must be dismissed.

**B.    The Section 227(b) Claim Should be Dismissed**

**1.    *Plaintiffs Do Not Have Article III Standing***

This case should be dismissed in its entirety because, in addition to the inability to allege a Section 227(c) claim, Plaintiffs cannot establish Article III standing for their Section 227(b) claim. "To satisfy the standing requirement, a plaintiff must prove that he '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Doane v. Benefytt Techs., Inc.*, No. 22-cv-

---

[15] The regulations apply only to a "residential telephone *subscriber who has registered his or her telephone number*" on the National DNC. 47 C.F.R. § 64.1200(c)(2) (emphasis added).

[16] *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15, 2022 U.S. Dist. LEXIS 124614, *6-7 (N.D. Iowa June 9, 2022) ("Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry…. Plaintiff does not allege, either directly or indirectly, that *she* registered her telephone number….") (emphasis in original); *Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4, 6 (D. Mass. Oct. 3, 2019) (denying class certification where plaintiff did not demonstrate that common proof could be used to "establish…whether the individual who received the call was the individual who registered his or her name on the Do-Not-Call Registry.").

10510, 2023 U.S Dist. LEXIS 40478, *16 (D. Mass. Mar. 10, 2023) (citing *Spokeo v. Robins*, 578 U.S. 330 (2016)). "[T]he complaint must…allege that plaintiff's injuries are traceable to the violations of the TCPA regulations." *Id.* at *17.

Here, as in the initial Complaint, each Plaintiff's Section 227(b) claim is premised on the alleged receipt of one prerecorded *unanswered voicemail*. FAC, ¶¶ 31 and 53; Compl., ¶¶ 25 and 37. Neither alleges how they suffered an injury caused by the voicemail allegedly using a prerecorded message (as opposed to a message left by a live person). *See Doane*, 2023 U.S Dist. LEXIS 40478 at *16-17 (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (2019) and dismissing claim premised on the TCPA's internal do not call regulations because alleged injury was not traceable to the claimed violation); *Grigorian v. FCA US LLC*, 838 Fed. Appx. 390 (11th Cir. Dec. 9, 2020) (plaintiff alleging one ringless voicemail lacked standing). Because an injury that is traceable to the alleged TCPA violation – premised on the use of a prerecorded message – has not been alleged, the Plaintiffs' Section 227(b) claim must be dismissed.

### 2.    *Plaintiff Wilson Fails to Adequately Allege a Section 227(b) Claim*

The Court should also dismiss Plaintiff Wilson's Section 227(b) claim because he has failed to adequately allege the claim. To survive a motion to dismiss, Plaintiff Wilson must allege "factual allegations beyond 'the call had a prerecorded [or artificial] voice.'" *Smith v. Pro Custom Solar LLC*, No. 19-20673, 2021 U.S. Dist. LEXIS 8616, *7 (D.N.J. Jan. 15, 2021). Wilson's Section 227(b) claim is premised on one alleged call. FAC, ¶ 53; Compl., ¶ 37. Wilson, however, does not allege any facts that allow the Court to determine that he plausibly alleged the use of a prerecorded or artificial voice. Instead, he alleges that he did not answer the call, was left a message with a "generic script that had been left with other consumers," and that it was a "prerecorded message rather than a live call." FAC, ¶ 53; Compl., ¶ 37. Faced with similar allegations, courts have not hesitated to dismiss Section 227(b) claims.

The plaintiff in *Metzler v. Pure Energy USA LLC*, for example, alleged that he received "a ringless voicemail," which "he was easily able to determine…was a prerecorded message." No. 21-CV-9798, 2023 U.S. Dist. LEXIS 19600, *14 (S.D.N.Y. Feb. 6, 2023). The Southern District of New York dismissed the claim, explaining that the plaintiff failed to allege "additional facts from which the Court c[ould] infer that the message was prerecorded." *Id.* at *14-15.[17]

Here too, Wilson fails to allege facts from which the Court can conclude that he plausibly alleged use of a prerecorded message. Wilson, for example, again does not allege the contents of the message (facts he should easily be able to allege if they support his claim), again does not allege details regarding what the voice sounded like, and does not otherwise allege facts that explain why he thinks it was a prerecorded message. *Compare* FAC, ¶¶ 55-56 *with* Compl., ¶ 37. While he now claims that the call was delivered in "a uniform, scripted manner" using "a generic sales script," as the court in *Metzler* explained, that does not sufficiently allege a call made with an artificial or prerecorded voice. *Metzler*, 2023 U.S. Dist. LEXIS 19600 at *14 (explaining that a voicemail did not "provide[] . . . indication that it was prerecorded as opposed to having been left by a caller reading from a script"). Nor does the allegation that the alleged message "was consistent with a scenario in which a prerecorded message played" plausibly allege a claim as there are no facts explaining what that conclusion means. Most conspicuously, while Taylor in

---

[17] *See also Manopla v. Sansone Jr.'s 66 Automall*, No. 17-16522, 2020 U.S. Dist. LEXIS 74792, *4 (D.N.J. Jan. 9, 2020) (dismissing prerecorded call claim where the complaint was "bereft of any allegations regarding the tenor, nature, or circumstances of the alleged calls" and "merely proffer[ed] the content of the message and conclusorily allege[d] that Defendant utilized a pre-recorded message"); *Andersen v. Nexa Mortg., LLC*, No. 24-cv-619, 2024 U.S. Dist. LEXIS 143293, *10-11 (C.D. Cal. Aug. 12, 2024) (allegations of a "long pause" and "several delays throughout the voicemail" did not suffice to allege a prerecorded call claim); *Smith v. American-Amicable Life Ins. Co.*, No. 2022 U.S. Dist. LEXIS 62115 (E.D. Pa. Apr. 4, 2022) (allegations that "the caller ID for both calls was 'spoofed' to make them falsely appear to be coming from a local number, which Plaintiff characterizes as 'further indication of the *en masse* nature of the calling'" did not suffice to state a claim for pre-recorded messages).

the FAC alleges an "artificial-sounding voice," Wilson makes no such allegation. FAC, ¶ 32. His

claim, instead, again insufficiently boils down to parroting the statutory "prerecorded" element.

### C.    The Request for Trebled Damages Should be Dismissed or Stricken

Like the initial Complaint, the Prayer for Relief in the FAC asks the Court to "enter a

judgment awarding . . . $1,500 for each knowing or willful violation." FAC, Pg. 14; Compl., Pg.

10. "We may triple the statutory damages if the fact-finder determines [defendant] 'willfully or

knowingly' violated the Telephone Consumer Protection Act. [The defendant] **must know it**

**performed violative conduct** because [i]f we interpreted the statute to require only that the

violator knew he was making a 'call'…the statute would have almost no room for violations that

are not 'willful or knowing.'" *Weingrad v. Top Healthcare Options Ins. Agency Co.*, No. 23-

5114, 2024 U.S. Dist. LEXIS 167980, *10 (E.D. Pa. Sept. 17, 2024) (some internal quotations

omitted and emphasis added; dismissing request for trebled damages). Here, as in *Weingrad*, the

Court should dismiss or strike the request for trebled damages because there are no factual

allegations in the Complaint explaining why trebled damages are warranted. *Sterling v. Securus*

*Techs., Inc.*, No. 18-cv-1310, 2020 WL 2198095, *6 (D. Conn. May 6, 2020) (dismissing

"willful or knowing" allegations because they were based on legal conclusions). The FAC does

not allege facts demonstrating that Savvy intended or knew it was calling in violation of the

TCPA. There are no allegations, for example, claiming that Savvy intended to call class

members without first obtaining consent, without a qualifying Established Business Relationship,

or after individuals asked for calls to stop.[18] Accordingly, there is no alleged basis for a finding

of willful or knowing conduct and the request should be dismissed or stricken.

---

[18] *See e.g. Bristow v. Am. Nat'l Ins. Co.*, No. 20-cv-10752, 2021 U.S. Dist. LEXIS 102406, *8
(E.D. Mich. June 1, 2021) (denying motion for leave to amend to add allegations regarding willful
or knowing violation because "Plaintiff's proposed claims would not survive a Rule 12(b)(6)
motion to dismiss, as he does not plead that Defendant continued to call despite notification of his
denial of consent or otherwise plead a knowing or willful violation"); *True Health Chiropractic,*

### D.    The Court Should Strike the Class Allegations

#### 1.    *The Alleged Classes Are Fail-Safe Classes*

Plaintiffs' fail-safe class allegations should be stricken. "[T]he fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established…. Certification of a fail-safe class would not only be 'palpably unfair to the defendant, it would be 'unmanageable' …." *Dixon v. Monterey Fin. Servs.*, No. 15-cv-03298, 2016 U.S. Dist. LEXIS 82601, *11 (N.D. Cal. June 24, 2016). "A fail-safe class is improper because courts may not 'engage in free-ranging merits inquiries at the certification stage.'" *Ochoa v. City of Los Angeles*, No. 20-cv-06963, 2025 U.S. Dist. LEXIS 155893, *49-50 (C.D. Cal. Aug. 11, 2025). The class allegations should be stricken because the slightly revised class definitions continue to track the elements of each claim and improperly turn on merits inquiries at the certification stage.[19]

---

*Inc. v. McKesson Corp.*, Nos. 22-15710 and 22-15732, 2023 U.S. App. LEXIS 28346, *7-8 (9th Cir. Oct. 25, 2023) ("willfully or knowingly" standard under the TCPA "requires more than merely intentional or volitional action…we have construed 'willfully' as requiring awareness than [sic] an action constitutes a legal violation and 'knowingly' as requiring awareness of the facts that constitute a legal violation") *reversed and remanded on other grounds by* 606 U.S. 146 (2025); *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (addressing TCPA claim and explaining, "[t]he requirement of 'willful[] or knowing[]' conduct requires the violator to know he was performing the conduct that violates the statute"); *Wakefield v. ViSalus, Inc.*, No. 15-cv-1857, 2019 U.S. Dist. LEXIS 104862, *4-5 (D. Or. June 24, 2019) (denying request for finding of willful or knowing violation and requiring that "Defendant…have known…the person being called had not given prior express written consent").

[19] *Compare* FAC, ¶ 72 and Compl., ¶ 40 *with* 47 C.F.R. §§ 64.1200(a)(1)-(3) and (c)(2). Fail-safe classes are problematic because they necessitate individualized inquiries (discussed below as well). *See e.g. Pepka v. Kohl's Dep't Stores, Inc.*, 16-cv-4293, 2016 U.S. Dist. LEXIS 186402, *8-10 (C.D. Cal. Dec. 21, 2016) (striking fail-safe classes due to individualized inquiries and noting discovery-related concerns) *and Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 12-cv-221, 2013 U.S. Dist. LEXIS 9554, *9-14 (E.D. Mo. Jan. 24, 2013).

In the initial Complaint, Plaintiffs cabined both classes to "telemarketing calls." Compl., ¶ 40.[20] In the FAC, Plaintiffs have now deleted "telemarketing" from the class definitions and replaced it with "a call advertising their goods or services." *Compare* FAC, ¶ 72 *with* Compl., ¶ 40. That change does not fix the fail-safe concerns that Savvy raised in its initial Motion.

For purposes of Plaintiffs' prerecorded call claim – the claim underlying the "Robocall Class" – whether a call includes "an **advertisement** or constitutes telemarketing" affects the consent inquiry. Under 47 C.F.R. § 64.1200(a)(1)(iii), a "**telephone call** . . . using . . . an artificial or prerecorded voice" made to a cellular line is prohibited unless it is made "with the **prior express consent** of the called party." Under 47 C.F.R. § 64.1200(a)(2), a "**telephone call that includes or introduces an advertisement or constitutes telemarketing**, using . . . an artificial or prerecorded voice," made to a cellular line, is prohibited unless it is made "with the **prior express written consent** of the called party." (emphasis added). Replacing "telemarketing" with "advertising" therefore does not alleviate the fail-safe concerns with the class. Instead, it highlights those concerns – if a call is not telemarketing or advertising, it requires only "prior express consent" whereas a telemarketing or advertising call requires "prior express written consent." Plaintiff's prerecorded class definition continues to require a threshold merits determination and, if a call does qualify as advertising, would exclude a class member who provided some form of consent besides "prior express written consent." The National DNC class definition is also problematic. A plaintiff succeeds on a National DNC claim only if they listed their number on the National DNC and calls are "telephone solicitations" – the regulations define "telephone solicitation" similarly to "telemarketing" and "advertisement" and exclude calls made with consent or pursuant to an Established Business Relationship from that definition.

---

[20] The TCPA's regulations define "telemarketing" and "telephone solicitation" to mean "a telephone call or message for the purpose of encouraging the purchase, or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(13) and (15).

*See* 47 C.F.R. § 64.1200(c)(2), (f)(1), (f)(13), and (f)(15). If a call is not a telephone solicitation in the first instance, a person *cannot* bring a Section 64.1200(c)(2) claim. Plaintiffs' class definition therefore requires merits determinations on critical central issues, including whether calls were trying to encourage the purchase of property, goods, or services (in other words advertising) and, if so, a determination of whether consent or Established Business Relationship defenses apply. The class definition also explicitly continues to require National DNC registration. *See e.g. Nichols v. eHealthInsurance Servs.*, No. 23-cv-06720, 2025 U.S. Dist. LEXIS 37917, *12 (N.D. Cal. Mar. 3, 2025) (class definition that turned on "telephone solicitations" was a fail-safe class); *Bryant v. King's Creek Plantation, L.L.C.*, No. 20-cv-00061, 2020 U.S. Dist. LEXIS 226044, *6-7 (E.D. Va. June 22, 2020) ("When plaintiffs define their classes to include members whose telephone numbers are listed on the National Do Not Call Registry, suggesting that the members did not consent to receiving the calls, a court cannot establish membership of the classes until the merits of the TCPA…claim[] is determined."); *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 12-CV-221, 2013 U.S. Dist. LEXIS 9554, *9 (E.D. Mo. Jan. 24, 2013) (striking class definition premised on receipt of faxes "advertising the commercial availability of any property, goods, or services").[21] The class allegations should thus be stricken.

## 2.    *Individualized Inquiries Will Dominate Any Class Analysis*

The class allegations should also be stricken because it is clear at this stage that individualized issues will dominate any class analysis, defeating commonality and predominance. Fed. R. Civ. Proc. 23(a)(2) and (b)(3).

---

[21] Plaintiffs initially alleged that registration on the National DNC "indicate[s] their desire not to receive telephone solicitations." Compl., ¶ 18. Plaintiffs tried to sidestep the concerns noted by *Bryant* by deleting that allegation but not addressing the substance of the problem. FAC, ¶ 18.

Plaintiffs allege two claims, each of which turns on individualized consent issues. Plaintiffs can only succeed on their first claim, premised on the alleged use of prerecorded messages, if Savvy did not have consent to call.[22] Likewise, Plaintiffs' second claim, premised on "telephone solicitations" to numbers on the National DNC, only survives if those calls were made without consent.[23] Evaluating whether appropriate consent exists requires an individual-by-individual inquiry. The Court will have to evaluate, for example: (1) how Savvy received each telephone number; (2) whether each person providing a telephone number agreed to specific consent language; (3) what that consent language said; (4) the purpose of each call (i.e., was it a telephone solicitation) and whether appropriate consent *for that type of call* was received; and (5) if there is a dispute over whether a person provided their telephone number, an evaluation of information such as, the IP address(es) used to consent, the individual's internet service provider, the IP address(es) assigned to that person on the specific date(s) of consent, the device information associated with the consent record, and the person's device(s) potentially used to consent. Based on this alone, the class allegations should be stricken.[24]

Separately, the alleged classes will require an individualized analysis to determine what type of call each person received. Plaintiffs allege two classes, each of which is limited to individuals who received "a call **advertising** . . . goods or services." FAC, ¶ 72 (emphasis added); Compl., ¶ 40 (formerly referencing "telemarketing"). Plaintiffs' class definitions

---

[22] *See* 47 C.F.R. §§ 64.1200(a)(1) (prohibiting calls "other than a call…made with the prior express consent of the called party") and 64.1200(a)(2) (prohibiting calls "other than a call made with the prior express written consent of the called party").

[23] *See* 47 C.F.R. §§ 64.1200(c)(2) (prohibiting certain "telephone solicitation[s]"), 64.1200(c)(2)(ii) ("Any person or entity making telephone solicitations…will not be liable…if…[i]t has obtained the subscriber's prior express invitation or permission."), and 64.1200(f)(15) (the term "telephone solicitation…does not include a call or message…to any person with that person's prior express invitation or permission").

[24] *See e.g. Fields v. Mobile Messengers Am., Inc.*, No. 12-05160, 2013 U.S. Dist. LEXIS 163950, *8-14 (N.D. Cal. Nov. 18, 2013) (class certification denied due to individualized issues relating to consent, which included analysis of consent records and IP addresses used to visit websites).

necessarily require a call-by-call analysis. If, for example, a person received a call in response to their inquiry, or a call to finish a transaction that they started (such as a call asking for additional vehicle information to finish their request for an insurance policy), a call may not qualify as advertising, telemarketing, or as a telephone solicitation and, in the case of Plaintiffs' first claim could require a lesser standard of consent (as opposed to prior express written consent) while in the case of Plaintiffs' second claim would not trigger a claim at all. And, as Plaintiff Wilson's allegations demonstrate, evaluating whether a call was made with a pre-recorded message will require an individualized inquiry that would include listening to each message and probing each putative class member as to why they believed they received a qualifying call.

Plaintiffs' National DNC claim is limited to telephone numbers that qualify as "**residential**." *See* 47 C.F.R. § 64.1200(c)(2). Assuming the Court allows this claim to proceed, deciding whether a line is residential will turn on a variety of facts specific to each phone number and potential class member. For example, the type of phone line at issue, the number of telephone lines and types of lines a particular person had at a given point, whether the individual (or a business) paid for the telephone line, and how the telephone line was used. *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020) ("plaintiff…must put forth evidence establishing…cellular telephone is used for residential purposes.")

Plaintiffs' National DNC claim will also necessitate individualized inquiries because "telephone solicitations" do not just exclude calls made with consent but also calls made pursuant to two different types of "established business relationships."[25] The term "established business relationship" "means a prior or existing relationship formed by a voluntary two-way communication…with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding

---

[25] *See* 47 C.F.R. §§ 64.1200(c)(2) and (f)(15).

the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call…." 47 C.F.R. § 64.1200(f)(5). Whether a call qualifies as a telephone solicitation will require an evaluation of prior communications, purchases, applications, inquiries, and a determination as to whether a call was made within an applicable 18 or 3-month period.

As explained above, moreover, Plaintiffs' National DNC claim can only be brought by a person "who has registered his or her telephone number" on the National DNC. 47 C.F.R. § 64.1200(c)(2). This too requires an individualized inquiry that merits striking the class allegations as to Plaintiffs' second claim. *Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4, 10 (D. Mass. 2019) (denying certification where plaintiff "failed to demonstrate that common proof can be used to establish . . . whether the individual who received the call was the individual who registered his or her name on the Do-Not-Call Registry"). Because the claims are rife with individualized issues, the class allegations should be stricken.

## V.    CONCLUSION

Savvy respectfully urges the Court to grant its Motion without leave to amend.

Respectfully submitted,

**SAVVY INSURANCE SOLUTIONS, LLC**

/s/  Keshav Ahuja
Keshav Ahuja BBO # 706907
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
Tel:  (617) 542-6000
Fax:  (617) 542-2241
KAhuja@mintz.com

Esteban Morales *(admitted pro hac vice)*
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA  90067
Tel:  (310) 586-3200
Fax:  (310) 586-3202
EMorales@mintz.com

*Attorneys for Defendant Savvy Insurance Solutions, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2025, I caused a true and correct copy of the

foregoing document to be filed electronically and served via the Court's ECF system as follows:

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

Attorneys for Plaintiffs
SARA TAYLOR and CHET WILSON

*/s/ Keshav Ahuja*
Keshav Ahuja